KUNKALMAN ET AL. *v.* GIBSON ET AL.

[No. 20,999. Filed May 26, 1908. Rehearing denied January 5, 1909.]

1. DRAINS.— *Construction.—Vested Rights.— Statutes.— Repeal.—* The drainage act of 1905 (Acts 1905, p. 456, §§5622-5635 Burns 1905) in repealing the drainage act of 1885 (Acts 1885, p. 129) did not disturb any vested rights of the petitioners in a proceeding which was pending when such repealing act took effect. p. 507.

2. STATUTES.—*Repeal.—Drains.—*Under the drainage act of 1905 (Acts 1905, p. 456, §§5622-5635 Burns 1905), repealing all former acts of the legislature with certain exceptions, the drainage act of 1885 (Acts 1885, p. 129), which was not excepted therein, was not continued in force as to pending proceedings by §243 Burns 1908, §243 R. S. 1881, providing that vested rights obtained

under "existing laws" shall not be affected by the repeal thereof, or by §248 Burns 1908, §248 R. S. 1881, providing that a repealed act shall nevertheless continue in force for the enforcement of any penalty, forfeiture or liability thereunder.   p. 507.

3.   STATUTES.—*Repeal.—Continuance of Repealed Statute for Certain Purposes.*—Section 243 Burns 1908, §243 R. S. 1881, providing that "no rights vested, or suits instituted, under existing laws shall be affected by the repeal thereof," affected only the rights obtained under laws existing at that time, and not those subsequently obtained.   p. 507.

4.   APPEAL.—*Briefs.—Waiver.*—The appellants' failure to discuss an alleged error under the "points and authorities" part of their brief constitutes a waiver of such alleged error.   p. 507.

5.   DRAINS. — *Petitions. — Lowering of Lakes. — Presumptions. —* Where a drainage petition describes the proposed drain as commencing at the outlet of a certain lake, the presumption is that the construction of such drain would affect such lake.   p. 507.

6.   SAME.—*Attempt to Lower Lake.—Statutes.—Repeal.—Saving Clauses.*—Where petitioners asked that a drain be established affecting a lake, they cannot, upon the repeal of the statute, which repeal saved all proceedings which did not affect such lakes, have the drainage commissioners' report set aside as "not according to law," and the matter referred back to them with instructions to lay out such drain so that it will not affect such lake.   p. 508.

7.   SAME.— *Statutes.— Repeal.— Saving Clauses.*— The repealing clause of the drainage act of 1905 (Acts 1905, p. 456, §14, §5635 Burns 1905), providing that all former laws shall be repealed in which a ditch has been ordered established, "or in which there is no attempt to and which will not lower or affect" any ten-acre body of water, does not save pending proceedings where the proposed ditch either "attempts" to lower such a lake, or which "affects" such lake.   p. 508.

8.   SAME.—*Statutes.—Repeal.—Effect.—Jurisdiction.—Abatement.*— Pending drainage proceedings not saved by the repealing clause of the drainage act of 1905 (Acts 1905, p. 456, §14, §5635 Burns 1905) were properly dismissed, the court ceasing to have jurisdiction.   pp. 508, 511.

9.   SAME.—*Statutes.—Repeal.—Exceptions.—Amendments to Come Within.*—Where a proposed drain affected a ten-acre lake, and the law under which the proceeding was brought was repealed, saving, however, all pending proceedings which did not affect such a lake, it is not an abuse of discretion to refuse an amendment to the petition altering the drain so that it will not affect such lake.   pp. 509, 510, 512.

Kunkalman *v.* Gibson—171 Ind. 503.

10. STATUTES.—*Repeal.—Exceptions.—Implied.*—Where a repealing statute saves certain pending cases, the courts cannot create further exceptions on the ground that it would be equitable so to do. p. 509.

11. SAME.—*Repeal.—Costs of Pending Drainage Proceedings.*—The courts cannot uphold a drainage proceeding in violation of a statute on the ground that a dismissal would subject the petitioners to the payment of the costs. p. 509, 512.

12. SAME.—*Construction.—Adding to.*—Courts must follow the plain words of a statute, and have no authority to add thereto or subtract therefrom. p. 509.

13. SAME.—*Legislative Powers Over.*—The legislature has full power to prescribe the method of establishing drains, and the jurisdiction of the courts in relation thereto. p. 511.

14. SAME. — *Repeal. — Drains. — Costs. — Liability for.* — Unadjudged costs in a drainage proceeding dismissed because of the repeal of the statute under which it was brought, do not constitute a "liability," as between the parties, as provided for in §248 Burns 1908, §248 R. S. 1881, providing that the repeal of any act shall not release or extinguish any "liability" incurred thereunder. p. 512.

From Noble Circuit Court; *Joseph W. Adair,* Judge.

Drainage proceeding by John Kunkalman and others against which Harlan Gibson and others remonstrate. From a judgment dismissing the proceeding, petitioners appeal. *Affirmed.*

*Robert W. McBride, Otis L. Ballou, H. G. Zimmerman* and *Wighton & Green,* for appellants.

*T. R. Marshall, J. W. Hanan, F. P. Bothwell* and *L. H. Wrigley,* for appellees.

GILLETT, C. J.—This proceeding was instituted by appellants in the court below to establish a public drain. At the January term, 1904, the proceeding was docketed and drainage commissioners appointed. January 1, 1906, the commissioners filed their report, locating the work and making assessments of benefits, and at the same term appellees filed a plea to the jurisdiction, wherein they sought to show that the work as described in the petition and report would lower certain fresh-water lakes of an area greater than ten acres

each.   After unsuccessfully demurring to the plea, appellants interposed a motion in writing, in which they alleged the fact of the enactment of the statute of March 6, 1905 (Acts 1905, p. 456, §§5622-5635 Burns 1905), the holding of this court thereunder in *Taylor* v. *Strayer* (1906), 167 Ind. 23, and that a portion of said work as laid out and proposed to be constructed passed through certain lakes.   The motion contained the following prayer:  "Now, therefore, the petitioners respectfully ask the court to set aside said final report and remand the same, together with said work, back to the drainage commissioners heretofore appointed in said proceedings, with instructions to revise, reform and amend their said final report in the matters of the location and construction of main lines, arms and branches as to terminus, route, location and character of said work, regardless of the line as in said petition described, and to amend, revise and reform all assessments of benefits therein as may in their judgment be required and necessary to be made in the location, construction and prosecution of said work to a successful completion, and so as to conform and comply with said legislation of 1905, as hereinbefore referred to, and to file an amended report when they, the said drainage commissioners, have completed their said work.   And that no part of said work shall be located or established so close to any lake covering ten acres or more of ground as to lower the water level of the lake, and at no point be nearer than forty rods of the high-water mark of said lake excepting only where drains empty into such lakes.   All of which matters the court now remands and remits to the judgment and discretion of said drainage commissioners for their action in said proceedings."   This motion was overruled, and, after a trial of the matter set up in the plea to the jurisdiction there was a finding for appellees on said plea, and a judgment dismissing the proceeding followed.

Appellants' first contention is that they had such a vested right in the proceeding as rendered it incompetent, as to

them, to repeal the drainage act of 1885 (Acts 1885, p. 129) by the act of 1905 before referred to. This question was decided adversely to appellants' contention in *Taylor* v. *Strayer, supra*. The whole matter, as to the establishment of the drain, the fixing of assessments, and the ultimate adjustment of costs, was *in fieri* when the act of 1905 took effect, and we perceive no basis for the claim that appellants were disturbed in any vested right.

It is next contended that the act of 1885 was continued in force as to existing drainage proceedings by virtue of §§243, 248 Burns 1908, §§243, 248 R. S. 1881. It was decided otherwise in *Taylor* v. *Strayer, supra*. It is plain that the latter section could have no application, and the inapplicability of the former section is equally evident when it is read in the light of the title of the act of which it is a part. The title reads as follows: "An act repealing all *former* acts of the legislature except those therein named." (Our italics.) 1 R. S. 1852, p. 430. While it was assumed in some of our earlier cases, without considering said title, that §243, *supra*, had such an operation for the future as to save rights vested or suits instituted under acts passed subsequent to the year 1852, yet the title of the act shows that the section had no application to such rights or suits, but that it related to rights and suits under then "existing laws."

We do not find that counsel for appellants make any point, under their points and authorities, against the sufficiency of the motion to dismiss because of any failure sufficiently to disclose that the petition sought the construction of a drain which would lower or affect fresh-water lakes of more than ten acres. For that reason the point is waived. But considering what is alleged in the petition, and reading it in the light of the facts averred in the motion to dismiss, we do not think that it can fairly be said, in view of the fact that one branch of the proposed drain was to commence at the

outlet of a lake, and assuming that dredging along water-ways extending into lakes and from thence into further waterways was designed to accomplish the ordinary purposes of such work, that it is not shown that the lakes would be affected by the petitioners' plan of drainage.

Appellants contend that they are not responsible for the location of the proposed drain by the commissioners, and that, in view of the motion to refer the matter back to them, their report should, on the whole, be deemed as "not according to law." The difficulty with this position, however, is that the location affecting lakes was really of appellants' own seeking, and therefore the case was one in which there was an "attempt" to lower a lake. The statute does not require, in order to terminate the proceeding, that there should be both an attempt to lower a lake and an actual situation in which the construction of the drain will have that effect, but the section at the outset declares generally that all laws and parts of laws in relation to drainage are repealed, and then, after excepting cases in which drains have been ordered established, there is an exception in favor of cases "in which there is no attempt to and which will not lower or affect any lake," etc. Both of these elements are required to concur to save the case, or else the first part of the language quoted would be useless.

Where there was an attempt in fact on the part of petitioners to lower or affect a protected lake at the time the act of 1905 became operative, there was no authority in law for the continuing of the proceeding, since it only awaited the ascertainment of the fact to require its dismissal. The time referred to was necessarily the testing time with every drainage proceeding then pending, for, if there was no law to authorize a continuance of it, it must necessarily follow that it would have to abate. Independently of this consideration, however, we may say that

as against the language of the statute we know of no sufficient reason for holding that it was the legislative purpose to permit changes more or less radical to be made in order to get within the exception. With the rough justice of a repealing act it might have been regarded as the fairest general rule to discontinue proceedings under a statute which no longer met the legislative approbation, instead of authorizing their continuance with changes likely to prove extensive.

It is useless, however, to philosophize, where there is a plain provision for the repeal of all existing laws on a certain subject. With certain specified exceptions, this court is not authorized to declare a further exception in order to give the statute an equitable operation. The act on which the proceeding was based imposed liabilities *in invitum*, and we have no authority, in order to save costs or otherwise, to uphold a proceeding in contravention of the statute. *Board, etc.,* v. *Jarnecke* (1905), 164 Ind. 658. It was held in the case last cited that, where a commissioner appointed to construct a drain was enjoined by a federal court from proceeding with the work, the petitioners were not liable for the costs for the preliminary work advanced by the county.

We cannot subtract from the broad language of the statute that with certain specified exceptions existing laws are repealed. Unless there is an adequate ground for the conclusion, nothing is to be added to or subtracted from statutory words of general scope and comprehensiveness. Endlich, Interp. of Stat., §17. As is said in 26 Am. and Eng. Ency. Law (2d ed.), 601: "Where the language of a statute is clear, it is not for the court to say that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions; a *casus omissus* can in no case be supplied, for that would be to make laws." Perhaps no better statement can be found of the doctrine that exceptions should not

ordinarily be declared by the courts where the legislature speaks broadly than is contained in *City of Pittsburgh* v. *Kalchthaler* (1886), 114 Pa. St. 547, 552, 7 Atl. 921, wherein the supreme court of Pennsylvania said: ''We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the lawmaking power. It is a practice to be avoided. It has been condemned by many text-writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never to be trodden, except upon considerations of the most convincing character and the gravest moment.'' We are of opinion, and so adjudge, for the reasons stated, that the court properly overruled appellants' motion. We may, however, add that we have doubts whether there was anything in said motion, even when viewed in the light of the whole record, which would enable us to say that there was any abuse of discretion in refusing to grant the prayer, viewing the matter from the position of appellants as to the construction of the statute, for there is at least serious ground for the contention that the face of the record was not such as to convict the court of an abuse of discretion in refusing to permit the commissioners to make further costs in the attempt to convert the proceeding into what would be in some respects a new scheme of drainage. To do so would doubtless have involved the dismissal of the proceeding as to many persons assessed with benefits, and we perceive nothing that would have advised the court that it was even probable that the benefits would have exceeded the costs, damages and expenses of effecting the drainage,

Kunkalman *v.* Gibson—171 Ind. 503.

We find no error, and therefore the judgment of the court is affirmed.

## ON PETITION FOR REHEARING.

Per Curiam.—It is for the General Assembly to determine the measure of jurisdiction which it will grant or withdraw in relation to the construction of public drains. *Taylor* v. *Strayer* (1906), 167 Ind. 23. An examination of the drainage legislation of 1905 shows a predominate purpose in the legislative mind to prevent the drainage of lakes of more than a specified area, and to that end the General Assembly, in repealing all prior drainage laws, saved existing proceedings only in certain cases. As to the excepted proceedings, it left the prior laws in force to secure their consummation. This proceeding was stricken down by the statute because it amounted to an "attempt to" drain a protected lake. Concerning the legislation here involved, we said, in *Taylor* v. *Strayer, supra:* "It was also the expressed intent of the legislature to save all pending ditch proceedings which had not progressed to final judgment, provided the proposed ditches were not designed to and would not affect lakes with the surface area named." The time when the law went into operation was the testing time for the determination of the question as to whether this proceeding should continue. The further language of the clause, which had to do with the actual result of lowering a protected lake, was to guard against eventualities, which might have that result. It is only upon the construction which we have given to the saving clause that all of its language can be made operative.

It must not be forgotten that the saving clause dealt with two classes of cases only: those existing proceedings which were to be concluded under former laws, and those which were to abate. As to the latter class, there was no authority left to modify the character of such pro-

ceedings, for former laws were repealed as to cases not within the class referred to, while the new law did not govern such cases, since pending proceedings which were not affected by the repeal would be concluded as if the "act had not been passed." It was therefore impossible to change a proceeding that had failed by reason of the repeal of the old law, so as to continue it under the new law.

In other words, appellants' claim of a right to have the report modified so as to avoid the statute involves the objection that there is no law under which they can proceed.

Counsel for appellants state that they are unable to understand how there could be any justice in a repealing clause which would leave the petitioners with a heavy burden of costs. At the most, the question whether the act operates fairly is a consideration which goes to its construction, but we may say that we fail to perceive how justice would be promoted by permitting a large amount of costs, made in the effort to carry out a materially larger scheme of drainage, to be laid upon landowners within the restricted district who had nothing whatever to do with the institution and carrying out of the proceeding. Doubtless it was the consideration that equal and exact justice could not be done in many cases wherein jurisdiction was withdrawn which prompted the legislature to make no provision whereunder the character of the proceedings could be modified. As between the parties hereto it cannot be said that unadjudged costs constitute a liability within §248 Burns 1908, §248 R. S. 1881, and, as between such parties, the repeal of the statute and the dismissal of the proceeding did not affect any vested or contractual right. *Taylor* v. *Strayer, supra.*

We have again considered the points originally made for a reversal, in addition to considering the petition and argument for a rehearing, and we continue of opinion that no available error exists. The petition is therefore overruled.