TAELMAN ET AL. *v*. BOARD OF FINANCE OF THE
SCHOOL CITY OF SOUTH BEND ET AL.

[No. 26,698.  Filed February 24, 1937.  Rehearing denied
April 30, 1937.]

*G. A. Farabaugh, W. R. Arnold,* and *George Sands,* for appellants.

*Roland Obenchain,* for appellees.

FANSLER, J.—By an act of the Legislature of 1927 (Acts 1927, ch. 65, §1, p. 170, Burns Ann. St. 1933, §28-1437, Baldwin's Ind. St. 1934, §10429), there was created the "board of finance of library building and ground fund" in cities having a population of not less than 70,000 nor more than 78,000. Ex officio, the president, secretary, and treasurer of the board of trustees of the school city made up the board. The act applied to the city of South Bend only. By that act, authority was

given to levy and assess taxes for a fund known as the "general public library fund," for use in the maintenance, support, and operation of free public libraries, and it is provided that, pending its use, it shall be deposited in such depository or depositories as may be designated by the board. It is provided that: "The bank, banks, trust company or trust companies offering the highest rate of interest for the use of the moneys in said fund . . . shall be designated as the depository or depositories of said fund." It is further provided that, before making any deposit, the board of finance shall require of the depository a bond, "conditioned upon the faithful accounting to such finance board of all moneys which may come into the possession of such depository or depositories and the performance of their obligations and acts as such depository or depositories." It is provided that, if the bond shall be personal, it shall be executed by not less than seven freeholders, in an amount not less than double the maximum amount of the funds to be held on deposit at any one time, and that, if it is a surety company bond, it shall be in an amount not less than the maximum amount of funds to be so held at any one time. It is further provided that the finance board shall have full power to require, from time to time, the increase of the amount of any personal bonds. There is also a provision that the commission of the depository may be revoked at any time, and a settlement required.

The finance board of the library building and ground fund of the school city of South Bend, on the 10th day of December, 1928, gave notice that it would receive sealed bids from qualified banks to act as depository of the funds in its hands, which then amounted to approximately $150,000, expressly reciting in the notice that depositories would be designated under the terms of the act referred to, and that the depository selected

would be and act as such "commencing on the first day of January, 1929, for, during and until the 31st day of December, 1930." The Washington State Bank of South Bend submitted a bid for $50,000 of the funds and offered interest at the rate of 5 per cent. per annum. Its bid was accepted, and it tendered a bond in the penal sum of $160,000, with appellants and cross-appellees as sureties thereon. On January 9, 1929, an initial deposit of $50,548.81 was made. Interest was credited to the account monthly. On June 29, 1929, there was a deposit of $5,095.27. On December 23, 1929, there was a deposit of $4,594.01. On June 30, 1930, there was a deposit of $3,489.46, and on December 30, 1930, a deposit of $3,404.53. The total balance in the Washington State Bank on December 30, 1930, was $72,810.53. On December 8, 1930, the finance board published a notice asking for bids from prospective depositories for a two-year period from January 1, 1931, which notice was in all respects like the one above referred to. The Washington State Bank filed a proposal dated December 31, 1930, in all respects like its former proposal, except that it bid on $75,000, and offered 2½ per cent. per annum interest. This proposal was accepted, and on January 9, 1931, it delivered its bond in the penal sum of $194,-000, with appellants, and no others, as sureties thereon, the cross-appellees who had signed the first bond not becoming sureties upon the second bond. On January 5, 1931, interest of $295.70 was credited. There were no further credits to the account. On January 29, 1931, the bank suspended business, the balance credited to the account upon that date being $73,106.23. This action was begun in February, 1932, by the "Board of Finance of the School City of South Bend," as plaintiff, against appellants. In December, 1932, an amended complaint was filed, making the cross-appellees additional parties defendant. There was a trial, judgment for the plaintiff

against appellants, and in favor of the cross-appellees.

Error is assigned upon the overruling of appellants' motion for a new trial, upon the ground that the decision of the court is not sustained by sufficient evidence and is contrary to law; and cross-errors are assigned upon the overruling of the motion of the appellee board for a new trial as to the defendants and cross-appellees Nimtz and Farabaugh, and upon the overruling of the motion to modify the judgment in respect to defendants Nimtz and Farabaugh.

Appellants contend here, for the first time, that if the bond was given pursuant to the act of 1927, the obligee was a distinct legal entity, the "Board of Finance of the Library Building & Ground Fund"; that it alone would have a cause of action under the act on the bond; and that, as the "Board of Finance of the School City of South Bend," is the plaintiff, and no ground is shown by the complaint or the evidence for substitution, the action cannot be maintained by the plaintiff; and that the decision of the court is contrary to law and not sustained by the evidence. By chapter 53 of the Acts of 1931 (Acts 1931, p. 122), the appellee board succeeded to all of the powers and duties of the board created by the act of 1927. No question of its right to sue was raised by demurrer or answer. In their stipulation covering the evidence, the parties treat the appellee board as the original contracting party. The appellee board's right to maintain the action cannot be successfully questioned at this time.

It is contended that at the time the second bond was executed the census of 1930 had been taken, showing an increase in the population of the city of South Bend, which took it out of the classification covered by the act of 1927; that, since the funds in question were no longer governed by the act of 1927, there was no legislation under which depositories could

be selected, except the General Depository Act of 1907, as amended in 1909; that therefore the bond is controlled by the terms of that act. But this contention cannot be sustained. The board of finance in charge of the fund was created by the act of 1927, and it is not shown to have accounted to any other board or body for the fund, and it is shown to have continued to exercise dominion over the fund. The advertisement for depository bids expressly declared that bids would be received pursuant to the terms of the act of 1927. The interest rate which the bank agreed to pay was not the same as the rate fixed in the Depository Act. The amount of the bond required and given, which was twice the amount of the maximum deposit contracted for, is different than that provided for by the General Depository Act. The Status Quo Law of 1929 (Acts 1929, ch. 81, p. 275), which provided for the continuance of governmental units in the same classification, notwithstanding changes in population shown by the census of 1930, had been enacted, and had not been declared inoperative. (See *Crowe* v. *Board of County Com'rs of the County of St. Joseph et al.* (1936), 210 Ind. 404, 3 N. E. [2d] 76.) At the time the bond was given, the parties assumed the act of 1927 to be in effect, and they contracted with reference to it. There was at least color of law authorizing this assumption. The bank received the benefits of the contract and still retains them. It cannot therefore be heard to question the validity of the law under which the contract was made in order to escape liability under the contract, and, if it cannot do so, neither can its sureties. The same rule applies to the contention of appellants that the act of 1927 was unconstitutional because it created an illegal classification.

It is also contended by appellants that the second bond, which covers "all the public money and effects, and each

and every part thereof, which may be deposited with or received by said principal," is prospective in operation, and that, as no monies came into possession of the bank subsequent to the time of its execution, there is no liability upon the bond. The appellee board of finance contends that the second bond was given as additional security; that it is merely cumulative; and that liability continued upon the first bond; and that the second bond is liable also for all funds on deposit at the time it was given. This is the basis of its contention that the court erred in finding for appellees Nimtz and Farabaugh, who signed the first bond and did not sign the second. The cross-appellees Nimtz and Farabaugh contend that the giving of the second bond discharged the first; that it is a new contract covering the entire obligations of the bank.

Appellants, in their brief, make no point, cite no authority, and direct no argument to the question of their liability upon the first bond, except the contention that they were relieved of liability by the Sureties Relief Act of 1933 (Acts 1933, ch. 78, p. 488, Burns Ann. St. 1933, §61-701, Baldwin's Ind. St. 1934, §13845). But this Relief Act is limited by its express terms to bonds given to secure deposits of public funds pursuant to the Depository Act of 1907, as amended. It was said in *Bolivar Twp. Board of Finance of Benton County* v. *Hawkins et al.* (1934), 207 Ind. 171, 191 N. E. 158, in both the majority and dissenting opinions, that the act does not apply to bonds which were not given pursuant to the Depository Act, and that it does not apply to sureties upon bonds of depositories of public library building and ground funds. It is contended that the reasons for the Relief Act apply as well to the sureties upon the bonds here in question as to sureties upon bonds given under the Depository Law. But that is argument which well might have been addressed to the Legislature. Courts

cannot bring parties within the purview of an act merely because the Legislature might with good reason have included them. Appellants say in their brief that: "A statute purporting to grant relief from what would otherwise be obligations or disabilities, will be so construed, if it can be done without violence to the language employed by the Legislature, as to embrace and relieve all persons in similar situation, notwithstanding a strict construction of the statute might result in excluding from its benevolence some persons who do not come within the letter but do come within the spirit of the law." In support of this proposition, they cite *Bullock* v. *Billheimer, Auditor, et al.* (1911), 175 Ind. 428, 94 N. E. 763, which involved the construction of an act authorizing Purdue University to conduct an experiment station; *Commercial Union, etc., Co.* v. *Schumacher* (1918), 71 Ind. App. 526, 119 N. E. 532, which holds that an insurance contract must be liberally construed so as to effectuate its purpose; and *Titus* v. *Town of Bloomfield* (1923), 80 Ind. App. 483, 141 N. E. 360, involving the interpretation of a statute requiring notice to the city of an injury resulting from a defective condition of a street. In the two cases involving statutory construction, the language of the statutes was obscure. But we have no such situation here. Where the language of a statute is clear and plain there is no room for construction, and courts have no power to supply supposed defects or omissions, or to resort to construction for the purpose of limiting or extending its operation. *County Board of Election Com'rs of Gibson County et al.* v. *State ex rel. Sides* (1897), 148 Ind. 675, 48 N. E. 226; *Cheney* v. *State ex rel. Risk* (1905), 165 Ind. 121, 74 N. E. 892; *Taylor* v. *State ex rel. Ogle* (1907), 168 Ind. 294, 80 N. E. 849; *Kunkalman et al.* v. *Gibson et al.* (1908), 171 Ind. 503, 84 N. E. 985, 86 N. E. 850; *State* v. *Shanks* (1912), 178 Ind. 330, 99 N. E. 481; *Citizens*

*Trust & Savs. Bank* v. *Fletcher American Co. et al.* (1934), 207 Ind. 328, 190 N. E. 868.

Appellants argue that, prior to the enactment of the Library Fund Act of 1927, library funds were governed by the General Depository Act of 1907; that the act of 1927 is an "off-shoot" of the General Depository Act; that, being an "off-shoot," the act of 1927 is an amendment to the Depository Law by implication, and that therefore sureties under the 1927 act are brought within the terms of the Relief Act by the expression, "the Depository Act of 1927, as amended."

In determining who are within the provisions of the Sureties Relief Act, we must give the ordinary and usual meaning to the expression "as amended." It has been expressly amended, and so the words "as amended" can be readily accounted for upon that ground. If a statute were enacted to repeal the act of 1907, "as amended," it would not be contended that it had the effect of repealing the Library Law of 1925, as amended in 1927.

Under section 21, article 4, of the Constitution of Indiana, an act may not be expressly amended without setting out the section at full length, so there was no express amendment. There can be no amendment of a statute by implication under the Constitution. *Wiley et al.* v. *Wiley et al.* (1919), 75 Ind. App. 456, 123 N. E. 252; petition to transfer denied April 29, 1921. It has some times been said that there is an amendment by implication, but only in cases where the so-called amending statute was so inconsistent that all, or a part, of the statute, said to be amended, could not stand. But this is repeal by implication, and not amendment. It is said in *State ex rel. Dearbeyne* v. *Greenwald, Judge* (1917), 186 Ind. 321, 327, 116 N. E. 296, 298, that: "The enactment of a law specifically and fully covering the same subject-matter that is covered or embraced in a general law, or any part of a general law, creates an excep-

tion to the general law, and operates to suspend or repeal to the extent of conflict between the two, and the later law has such an effect unhampered by the constitutional provision mentioned. Such action by the legislature is not within the definition of the (sic) amendment. It is true that the general law, so far as its territorial operation is concerned, is by a local law otherwise valid, limited, modified and in a sense changed, but this results rather from the fact that as the two cannot operate at the same time, specific expression controls to the extent of its terms." The same rule would apply to a specific law governing part of the subject-matter of a general law.

The act of 1927 does not purport to be an amendment of the General Depository Act, either upon its face or in its title. The depository features of the act are merely incidental, but it does establish a method of selecting depositories different and distinct from the method under the General Depository Law. Assuming that the funds in question were controlled by the General Depository Law prior to 1927, the act takes such funds out of those affected by the law. But, since it is not expressly amendatory, and, since there can be no amendment by implication, there is no basis whatever for the conclusion that the Legislature intended to include this act, and perhaps others of like character, by the use of the expression, "chapter 222 of the Acts of 1907, as amended."

The act of 1927 does provide that the board of finance may take or require additional security, and it does not expressly provide that depository contracts shall be taken for a specific time, or for periodical advertising for bids. But there is nothing in the act which would prevent the board of finance from advertising for and making new contracts from time to time, if such a course is deemed desirable or advan-

tageous. The amount of interest to be paid by the depository is determined by the contract, and not by the statute. It is reasonable to suppose that a depository would not want to be bound to pay the rate of interest current at the time of its bid over a long and indefinite term of years, if the current rate happened to be high, nor that the board of finance would desire to bind itself to a very low rate of interest for an indefinite term of years, if current interest rates happened to be unusually low. Why the original depository contract was limited to two years does not appear. It may be that the board had information that it could procure a return of 5 per cent under a two-year depository contract, and that it could not secure such a return under an indefinite or a longer contract. It is not suggested that the board did not have power to make the contract, and its power to do so can scarcely be questioned. Under the original contract, the depository contracted to pay interest at the rate of 5 per cent. per annum. Under the second contract, it agreed to pay interest at the rate of $2\frac{1}{2}$ per cent per annum. It would no doubt be difficult to procure freehold sureties who would be willing to sign a depository bond unlimited as to time. The relationship between the board of finance and the depository was that of creditor and debtor, and the contract of the sureties on the bond is similar to that of sureties upon a note. It seems clear that, if the interest rate which the depository agreed to pay under the first contract had been $2\frac{1}{2}$ per cent, those who signed the bond would not be bound if the interest rate in the contract was thereafter changed to 5 per cent without their consent. It seems clear from the record that the money which the board indicated that it had for deposit in the second advertisement was the identical money which was then on deposit, and that the advertisement was intended as an invitation to submit bids upon a new depository con-

tract. The fact that the Washington State Bank was awarded the contract as a depository for the identical funds which it then had on deposit under its former contract cannot influence the decision of the question, for it is clear that if another bank equally acceptable had offered a higher rate of interest, the award would not have gone to the Washington State Bank, and it would have been required to account for and pay the money due under its first contract, and there would have been no second bond. If the Washington State Bank had continued as depository for twenty years, under contracts made pursuant to invitation for bids every two years, and with a new bond every two years, in an amount sufficient to cover the total deposits for each period, it seems improbable that it would be contended that the ten bonds were cumulative and that the sureties on all of the ten bonds were liable for all of the funds. The analogy of the promissory note with sureties may be carried further. If, at the maturity of the note, the debtor gives a new note for the amount due, with new sureties, a new contract is created and the sureties on the old note are discharged. It is not necessary that the money due upon the old note be paid to the creditor, and the money paid back to the debtor. The law does not require such idle ceremony. *Murphy* v. *Oren* (1889), 121 Ind. 59, 22 N. E. 739. That the plaintiff recognized that there was no default under the first contract, and that the new contract was in effect as to all of the money on deposit after January 1, 1931, is indicated by the allegation of the complaint in which interest from January 1, 1931, until January 29, 1931, the date the bank closed, is claimed upon the basis of 2½ per cent, the amount provided for in the second contract. It is as though a bank had issued its certificates of deposit, with personal surety, and, on the date it became due, without paying over the money and receiving it back, issued a new cer-

tificate of deposit for the amount due under the old, but with new sureties. The fact that seven of the nine sureties who signed the first bond signed the second, and that there were no other sureties on the second, can have no influence except as it tends to indicate that the bond was not taken as additional security. The transaction must be treated as though the depository had completed its first two-year contract, and accounted for the funds, and had received them again under a new and different two-year contract; and, under the facts disclosed, such must have been the understanding of all of the parties at the time the second contract was made. The contention that the second bond was merely additional security, and cumulative, and that the cross-appellees continued liable, cannot be sustained. Since it is as though the funds had been redeposited at the beginning of the term of the new bond, appellants' contention that the bond was prospective only loses its force.

Judgment affirmed.