MEADE ELECTRIC COMPANY, INC. ETC. *v.* HAGBERG ETC.

[No. 19,236. Filed June 19, 1959.]

*Frank A. J. Stodola,* of Hammond, for appellant.

*Joseph P. Sullivan,* of Whiting and *Bernard M. Mamet,* of Chicago, Illinois, for appellee.

KELLEY, J.—Appellant, by its complaint, sets forth that it is a corporation duly organized and existing under the laws of the State of Indiana, engaged in the electrical contracting business and in addition, maintains a motor shop which engages in the business of repairing, rebuilding and servicing electrical motors and other devices. The defendant is Harold P. Hagberg, who is sued in his representative capacity as Business Manager and a member of Local 697, International Brotherhood of Electrical Workers, which is an unincorporated labor organization. The complaint alleges that the defendant, Local 697, International Brotherhood of Electrical Workers, had been certified by the National Labor Relations Board as exclusive bargaining representative for all of the electricians of the motor division of plaintiff company, under the provisions of the Labor-Management Relations Act of 1947, and that the complaint further alleges that plaintiff and defendant had mutually arrived at and agreed to the terms of a certain collective bargaining agreement with the exception of Article VI, which Article reads as follows:

## "NO DISCRIMINATION—EQUAL BENEFITS —EQUAL OBLIGATION.

*Section 1. Agency Shop.* (a) Membership in the Union is not compulsory. Employees have the right to join, not join, maintain or drop their membership in the Union, as they see fit. Neither party shall exert any pressure on or discriminate against an employee as regards such matters.

(b) Membership in the Union is separate, apart and distinct from the assumption by one of his equal obligation to the extent that he receives equal benefits. The Union is required under this

agreement to represent all of the employees in the bargaining unit fairly and equally without regard as to whether or not an employee is a member of the Union. The terms of this Agreement have been made for all employees in the bargaining unit and not only for members in the Union, and this Agreement has been executed by the Employer after it has satisfied itself as the result of a secret ballot that the Union is the choice of a majority of the employees in the bargaining unit and the Union has been certified by the National Labor Relations Board. Accordingly, it is fair that each employee in the bargaining unit, pay his own way and assume his fair share of the obligation along with the grant of equal benefit contained in this Agreement.

(c) In accordance with the policy set forth under sub-paragraphs (a) and (b) of this Article, all employees shall, as a condition of continued employment, pay to the Union, the employee's exclusive collective bargaining representative, an amount of money equal to that paid by other employees in the bargaining unit who are members of the Union, which shall be limited to an amount of money equal to the Union's regular and usual initiation fees, and its regular and usual dues and its general and uniform assessments. For existing employees, such payments shall commence forty-five (45) days following the date of execution of this Agreement and for new employees, the payment shall start forty-five (45) days following the date of employment."

The plaintiff claimed that the aforementioned clause was in violation of the Indiana Right to Work Law, Acts of 1957, Chap. 19, Burns' §40-2701—§40-2705, and that the insistence of the defendant to include such clause constituted an unlawful act which would result in substantial and irreparable injury to plaintiff. Further, the complaint asked for a temporary and permanent injunction restraining and en-

joining the defendant from commission of any act calculated directly or indirectly to coerce or force the plaintiff to execute a collective bargaining agreement which contained said clause and from the solicitation or insistence of the incorporation of said clause in a collective bargaining agreement.

To this complaint the appellee filed a demurrer based upon the grounds:

1. The complaint does not state facts sufficient to constitute a cause of action, and in the demurrer and the memorandum thereto alleged that the tendered and questioned provision of such collective bargaining agreement was not in violation of the Indiana Right to Work Law; and

2. That the court was without jurisdiction to entertain plaintiff's complaint because the determination of the matters raised therein lies solely within the province of the National Labor Relations Board under the doctrine of federal preemption.

The court sustained the demurrer to appellant's complaint for a temporary and permanent injunction and rendered judgment for the appellee, and that the plaintiff take nothing by its complaint herein and the defendant do have and recover its costs laid out and expended. The plaintiff failed to plead over and elected to stand on the demurrer, and the court rendered judgment for the defendant.

Thereafter, the appellant filed its transcript and assignment of errors in this court based upon the grounds that the court erred in sustaining the demurrer to appellant's complaint and that the court erred in its conclusions of law.

Both parties have argued the question of federal preemption, but quite clearly no such question is

raised by the complaint and demurrer in this case which would call for our consideration of the doctrine of federal preemption. Appellant's complaint alleges that the aforequoted agency shop clause, allegedly urged upon it by appellee, constitutes a violation of Indiana's Right to Work Law. Appellee's demurrer poses the sole legal proposition of whether said agency clause, as alleged upon, does, in fact, violate said Right to Work Law. It must be apparent that the Lake Superior Court, being a court of general jurisdiction, possesses the requisite jurisdiction to determine said question. Any suggestion of want of jurisdiction in said court to hear and determine a matter preempted by Federal agencies falls without the pale of the instant inquiry. The Labor-Management Relations Act, commonly known as the Taft-Hartley Law, by section 14 (b) thereof, specifically authorizes and recognizes the validity of Right to Work Laws of the several states. Now, whether or not such authorization and recognition would extend to or authorize a state legislature to validly "outlaw" such "agency shop" clauses would, perhaps, require and necessitate an extensive exploration of this doctrine of federal preemption, a question and task with which we are not here confronted.

The issue tendered in this appeal is whether the defendant seeks to coerce or force the plaintiff to do an illegal act by executing a collective bargaining agreement containing the clauses providing for an "agency shop." The Indiana Right to Work Law, which is a relatively short act, provides as follows:

"Public Policy. It is hereby declared to be the public policy of the State of Indiana that membership or non-membership in a labor organization should not be made a condition to the right to work or to become an employee of or to con-

tinue in the employment of any employer; that employees should have the right of self-organizations; and the right to form, join, continue membership in, or assist labor organizations; and that employees should equally have the right to refrain from forming, joining, continuing membership in, or assisting labor organizations. The aforesaid rights of employees and each and all of them are fundamental and essential rights and any agreement between employers and labor organizations which makes membership or the maintenance thereof, or non-membership, in a labor organization a condition of employment or continued employment, and any denial, severance or interruption of employment because of such membership or non-membership are violations of said rights and are against the public policy of the State of Indiana. (Acts of 1957, Chap. 19, Sec. 1; Burns' §40-2701 C. P. S.)

"Definitions. When used in this Act, the term 'labor organization' shall mean any organization of any kind, or any agency, or employee representation committee or plan, which exists for the purpose in whole or in part of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work. (Acts of 1957, Chap. 19, Sec. 2; Burns' §40-2702 C. P. S.)

"Prohibited Agreements. No corporation or individual or association or labor organization shall solicit, enter into or extend any contract, agreement or understanding, written or oral, to exclude from employment any person by reason of membership or non-membership in a labor organization, or to discharge or suspend from employment or lay off any person by reason of his refusal to join a labor organization or by reason of his failure to maintain his membership in a labor organization or by reason of his resignation or expulsion or suspension from a labor organization. Any such contract, agreement or understanding, written or oral, entered into or extended after the effective date of this act, shall be null and void and of no force or effect. (Acts of 1957, Ch. 19, §3; Burns' §40-2703 C. P. S.)

"Prohibited Conduct. No corporation or individual or association or labor organization shall encourage the exclusion, discharge, suspension, or layoff from employment of any person pursuant to any contract, agreement or understanding, written or oral, which contract, agreement or understanding violates Section 3 of this Act. No corporation or individual or association or labor organization shall exclude, discharge, suspend, or lay off from employment any person pursuant to any contract, agreement or understanding, written or oral, which contract, agreement or understanding violates Section 3 of this Act. (Acts of 1957, Chap. 19, Sec. 4; Burns' §40-2704 C. P. S.)

"Penalties. It is hereby declared to be a misdemeanor:

(a) to solicit, enter into or extend any agreement or understanding, written or oral, which contract, agreement or understanding violates Section 3 of this Act;

(b) to encourage the exclusion, discharge, suspension or layoff from employment of any person pursuant to any contract, agreement or understanding, written or oral, which contract, agreement or understanding violates Section 3 of this Act;

(c) to exclude, discharge, suspend, or lay off from employment any person pursuant to any contract, agreement or understanding, written or oral, which contract, agreement or understanding, violates Section 3 of this Act; and any corporation or individual or association or labor organization which commits any of said acts may, upon conviction be fined in any sum not to exceed one hundred dollars ($100) to which may be added imprisonment not to exceed ten (10) days. (Acts of 1957, Chap. 118, §5; Burns' §40-2705 C. P. S.)"

From a consideration of the statute in question it appears that the conduct which is made illegal and the agreements which are prohibited as being contrary to law relate to the membership or non-member-

ship in a labor union or labor organization. The clause in the agreement in question provides that employees have the right to join, not join, maintain or drop their membership in the union as they see fit. The agreement does provide that as a condition of continued employment the employee shall pay to the union as the employee's exclusive collective bargaining representative, an amount of money equal to that paid by other employees in the bargaining unit who are members of the union. The appellant claims that this so-called "agency shop" clause is prohibited under the Indiana Right to Work Law Act and that the payment of dues, fees or any charges to a labor union and actual membership therein is but a strained, fanciful variance of form and not of substance.

The above quoted Right to Work Law contains a penalty provision. The law is well settled that penal statutes will be strictly construed, and not construed to include anything *beyond its letter, though within its spirit,* and it cannot be enlarged by construction, implication or intendment beyond the fair meaning of the language used. *Van Arsdall* v. *Indiana Bell Telephone Company* (1926), 84 Ind. App. 257, 259, 151 N. E. 19; *Evansville and Ohio Valley Railway Company, Inc.* v. *Southern Indiana Rural Electric Corporation, Inc.* (1953), 231 Ind. 648, 652, 109 N. E. 2d 901. And where the language of a statute is clear and unambiguous, it must be held to mean what it plainly expresses. *Cheney* v. *State ex rel.* (1905), 165 Ind. 121, at page 125, 74 N. E. 892, citing 2 Lewis' Sutherland, Stat. Constr. §367; Endlich, Interp. of Stat., Sec. 4, and in *Kunkalman* v. *Gibson* (1908), 171 Ind. 503, 84 N. E. 985, the court quotes from 26 Am. and Eng. Ency. Law (2d ed.) 601:

"As is said in 26 Am. and Eng. Ency. Law (2d

ed.), 601: 'Where the language of a statute is clear, it is not for the court to say that it shall be so construed as to embrace cases, because no good reason can be assigned why they were excluded from its provisions; a *casus omissus* can in no case be supplied, for that would be to make laws.' Perhaps no better statement can be found of the doctrine that exceptions should not ordinarily be declared by the courts where the legislature speaks broadly than is contained in City of Pittsburgh v. Kalchthaler (1886), 114 Pa. St. 547, 552, 6 Atl. 921, wherein the supreme court of Pennsylvania said: 'We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the law making power. It is a practice to be avoided. It has been condemned by many text-writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never be trodden, except upon considerations of the most convincing character and the gravest moment!'"

In *Taylor* v. *State ex rel.* (1906), 168 Ind. 294, at pages 296 and 297, 80 N. E. 849, the Supreme Court states:

"In cases of uncertainty or ambiguity, necessitating a construction of statutes, the primary object is to ascertain and give effect to the legislative intention. But, where the language of enactments is free from ambiguity and uncertainty, courts cannot supply defects or omissions in order to carry out more fully the supposed purpose and intent of the legislature. Endlich, Interp. of Stat., Sections 18, 22."

There are numerous cases which follow the rule that where the language or statute is clear and plain

there is no room for construction, and courts have no power to supply supposed defects or omissions or to resort to construction for the purpose of limiting or extending its operation, and judicial construction is not allowable to interpret the law which is plain upon its face. *Taelman* v. *Bd. of Fin. of School City of South Bend* (1937), 212 Ind. 26, at page 33, 6 N. E. 2d 557, *Bd. of Election Commissioners of Gibson Co.* v. *State ex rel. Sides* (1897), 148 Ind. 675, at 678, 48 N. E. 226; *Poyser* v. *Stangland* (1952), 230 Ind. 685, 106 N. E. 2d 390. The Indiana Right to Work Law is plain and unambiguous, and there is no prohibition against the requirement of the payment of fees or charges to a labor organization. The Indiana law merely prohibits agreements and conduct which conditions employment on membership in a labor organization.

Indiana was the nineteenth state to pass a so-called "Right to Work" law. Of the nineteen states passing a right to work law fifteen of them contained specific provisions against the requirement of the payments of dues, fees, charges or other monetary considerations of any kind to any labor union or labor organization. Indiana, Arizona, Nevada and North Dakota do not have specific provisions against the payment of fees or charges to a labor organization, although the Right to Work statutes specifically outlaw agreements conditioning employment upon membership in a union. These four states passed their Right to Work Acts in the following years: Arizona, 1946; North Dakota, 1948; Nevada, 1952, and Indiana, 1957. North Carolina in 1947 passed a statute which specifically prohibited the payment of fees to labor organizations. Chapter 95, Article 10, Section 95-82 Laws of North Carolina (1947). Cer-

tainly, apart from specific, unambiguous. language of the Indiana Right to Work Law, which does not specifically prohibit the payment of dues, fees and charges, because of the fact that there are the two types of statutes in the states of this country dealing with such legislation, which states had passed such laws prior to the time the Indiana law was enacted, it would seem that the clear, unequivocal language of the Indiana act was intended to apply to union membership and not to outlaw "agency shop" agreements which provide for the payment of fees and dues to labor organizations properly designated as collective bargaining representatives. Had the legislature intended to make such provisions and such conduct illegal it should have so expressly declared in the language of the act. *Carnegie-Illinois Steel Corp.* v. *Review Bd. of Indiana Employment Security Division et al.* (1947), 117 Ind. App. 379, 72 N. E. 2d 662. From an examination of the provisions of the plain, unequivocal language of the Indiana Right to Work Law and the provisions contained in Article VI of the agreement in question we cannot conclude that such provisions providing for the so-called agency shop agreement are illegal under the Indiana Right to Work Law.

This court cannot judicially legislate. Under our system of constitutional separation of powers between the legislative, executive and judicial, courts must avoid judicial legislation or an entry into the legislative field. A court may not under the guise of construction modify, amend, remodel or rewrite, nor disregard the terms and positive provisions of a statute. To depart from the meaning expressed by the words of the statute is to alter it, and it is not construction but legislation, and this court cannot

construe an act any more broadly or give it any greater effect than its terms require. 50 Am. Jur., pp. 213-15, Secs. 228, 229. If the legislature of the State of Indiana intends to make illegal the requirement of the payment of fees to labor organizations in connection with the negotiation of contracts as the duly certified collective bargaining representative, it is incumbent upon the legislature to so specifically provide as has been done in the acts passed in many of the other states.

For the reasons given herein, the judgment is hereby affirmed.

Bierly, J., Gonas, C. J., and Smith, J., concur.

NOTE.—Reported in 159 N. E. 2d 408.