MILLEDGE, STANLEY, Associate Judge.
Heftier Construction Company, a New Jersey corporation doing business in Florida, obtained in the Circuit Court of Dade County, a final decree permanently enjoining a number of unions from engaging in a secondary boycott. It was found that the unions stopped work in a large residential project in Dade County known as Carol City, in an effort to force Heftier, the general contractor, to stop buying concrete *32 from Acme Concrete Company, a non-union company. The unions defended solely on the ground that the state court had no jurisdiction. They contended that state power had been superseded by federal in the National Labor Relations Act. They raised this question by motion to dismiss the complaint, but the effect of defendants’ conduct on interstate commerce not appearing on the face of the complaint, the motion was denied. A temporary injunction was granted and affirmed by this court, per curiam. The defendants then by answer alleged the interstate character of the plaintiff’s business. A trial was held on this issue. The chancellor found that the plaintiff was not engaged in interstate commerce and made the injunction permanent. The defendants appealed to the Florida Supreme Court but jurisdiction was declined as no constitutional question was involved and the case was transferred to this court, 112 So. 2d 848. It will be convenient to refer to the parties as they were in the trial court.
It is obvious and uncontroverted that the secondary boycott found to exist is an unfair labor practice as defined by the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (A). The act grants exclusive jurisdiction to federal agencies to provide a remedy for such unfair labor practice provided that the practice affects interstate commerce. Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601; Amalgamated Meat Cutters & Butcher Workmen v. Fairlawn Meats, 353 U.S. 20, 77 S.Ct. 604, 1 L.Ed.2d 613; Hotel Employees Union v. Sax Enterprises, 358 U.S. 270, 79 S.Ct. 273, 3 L.Ed.2d 289.
There is only one question here: Did the unfair labor practices of the defendants have an effect on interstate commerce?
No question of violence is here involved which would give the state jurisdiction on that score. United Automobile, etc., Workers v. Wisconsin Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162. There is present no agreement between the National Labor Relations Board and a Florida agency ceding jurisdiction to the state under § 10(a) of the Act, 29 U.S.C.A. § 160(a). The presence of state jurisdiction depends on the absence of an effect on interstate commerce.
The chancellor found that the plaintiff was not engaged in interstate commerce. The National Labor Relations Act does not limit its scope to those engaged in interstate commerce. “It is the purpose and policy of this chapter, in order to promote the full flow of commerce * * * to define and proscribe practices on the part of labor and management which affect commerce * * The chancellor did not find that the unfair labor practice of the defendants had no effect on interstate commerce. Such a finding would have been impossible since even the plaintiff’s version of the evidence was that it had made out-of-state purchases of $302,626.47 and it did not quarrel with the defendants’ figure of $606,990.75 for the plaintiff’s indirect out-of-state purchases; that is, purchases by sub-contractors of materials which went into the Carol City project. These purchases cannot be characterized as so trifling that the doctrine de minimis non curat lex applies. This seems obvious even though the record does not show the extent of intrastate purchases so that the ratio can be definitely known. The United States Supreme Court stated in the Fairlawn Meats case, supra, that interstate purchases of $100,000 out of total purchases of $900,000 was not so small that a labor practice must have a negligible effect on commerce. “Examining the Act in the light of its purpose and the circumstances in which it must be applied we can perceive no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis.” National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 672, 83 L.Ed. 1014. While the court there dealt with the Act of 1935, the jurisdictional language of that Act is the same as the present Act.
*33 Another and highly significant consideration in measuring effect on commerce is the probable effect of these unfair labor practices if unchecked and similar acts are repeated throughout the country. It is the effect of proscribed labor conduct on commerce generally and not merely that part of commerce engaged in by a party to the cause which brings such conduct within the scope of exclusive federal control. “Whether or no practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is .representative of many others throughout the country, the total incidence of which if left unchecked may become far-reaching in its harm to commerce.” Polish National Alliance v. National Labor Relations Board, 322 U.S. 643, 648, 64 S.Ct. 1196, 1199, 88 L.Ed. 1509.
Much of the argument before the chancellor and on this appeal dealt with the National Labor Relations Board’s announced standards by which it determines whether to take jurisdiction. N.L.R.B. release No. R-449, July 15, 1954. Among these are “an enterprise which receives goods or materials from out a State valued at $500,000 or more * * *, an enterprise which receives goods or materials from other enterprises in the same state which those other enterprises received from out the State, valued at $1,000,000 or more * *
The plaintiff contends that these standards constitute jurisdictional limits to the scope of the Act on the theory that if the Board refuses jurisdiction the state must necessarily have jurisdiction in order to prevent the unfortunate consequences of a “no man’s land.” In the Guss case, supra, this argument was advanced and expressly rejected. Apparently to avoid the obstacle of this decision, the plaintiff alternately argues that the Board’s standards are a determinative of a de minimis effect upon interstate commerce. The existence of an effect on interstate commerce, and the Board’s policy as to what cases it will assume jurisdiction over, are two totally different things, as we think the Guss and Fairlawn cases made plain. The act neither expressly nor by implication places a quantitative jurisdictional minimum requirement. The Board’s standards are no more than a policy declaration defining what portion of the job assigned to it by Congress the Board thinks it has the manpower to accomplish. The term “no man’s land” (incidentally not invented by the Chief Justice in the Guss case) has the unfortunate implication of a jurisdictional hiatus, an area where no power exists to cope with problems condemned by Congress and often by state legislatures as well.[1] It is not a jurisdictional, but a policy no man’s land. It is the kind of “no man’s land” which exists anywhere that court facilities are unequal to the mounting litigation. It is the jurisdictional “land” of the federal government, notwithstanding that Congress may have tended this “land” inadequately.
*34 The decree appealed from is reversed with directions to dissolve the injunction and dismiss the complaint for want of jurisdiction.
Reversed with directions.
HORTON, C. J., and CARROLL, CHAS., J., concur.

. But see § 701(a) of the Labor Management Act of 1959, further amending § 14 of the National Labor Relations Act, 29 U.S.C.A. § 164, which includes a new provision, effective 60 days after September 14, 1959, as follows:
“(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: Provided, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.
“(2) Nothing in this Act shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Gommonwealth of Puerto Bico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction.”