123 So.2d 323 (1960)
William H. BOYD, Appellant,
v.
COUNTY OF DADE, State of Florida, Appellee.
Edmund TODD, Appellant,
v.
COUNTY OF DADE, State of Florida, Appellee.
Supreme Court of Florida.
September 28, 1960.
*324 Charles H. Wakeman, Jr., and Harvie S. Duval, Miami, for appellants.
Richard E. Gerstein, State Atty., and Glenn C. Mincer, Asst. State Atty., Miami, for appellee.
*325 DREW, Justice.
Appellants William H. Boyd and Edmund Todd were charged in the Metropolitan Court of Dade County, Florida with unlawfully driving or being in the actual physical control of a vehicle within Dade County, Florida while under the influence of intoxicating liquor or narcotic drugs and while affected to the extent that their normal faculties were impaired contrary to the provisions of the traffic ordinance of Dade County.[1] Each of the appellants filed a motion for trial by jury asserting that they were entitled thereto under Sections 3 and 11 of the Declaration of Rights of the Florida Constitution.[2] The motions in each case were denied by the trial judge, each of the defendants were duly tried without a jury and adjudged to be guilty. Todd was fined $50 and costs or five days in jail while Boyd was fined $250 and costs or twenty-five days in jail. From these final judgments entered on separate dates, separate appeals were prosecuted to this Court. Because the questions presented in both appeals are identical, they have been consolidated and will be disposed of in one opinion.
Three questions are posed for determination. The first is whether the Metropolitan Court of Dade County is a trial court within the meaning of that part of Article V of the Florida Constitution authorizing direct appeals from trial courts to this Court as a matter of right from final judgments or decrees directly passing upon the validity of a state statute or a Federal statute or treaty or construing a controlling provision of the Florida or Federal Constitution.[3] If the first question be decided in the affirmative, the next and second question for determination is whether such trial court in this case construed a controlling provision of the Florida Constitution. If both of the foregoing questions be answered in the affirmative, we then reach the ultimate question of whether the denial of the right to a trial by jury to Todd and Boyd is contrary to the provisions of Sections 3 and 11 of the Declaration of Rights of the Florida Constitution. We shall discuss these questions in the order in which they have been stated.
*326 In determining whether, in the constitutional sense, the Metropolitan Court of Dade County is a trial court, thereby giving this Court jurisdiction to entertain a direct appeal from the type of judgment described in Article V, Section 4(2) of the Florida Constitution, at least two specific provisions of said Article V must be considered. The first authorizes direct appeal from trial courts to this Court in the instance above related. The second provides that circuit courts shall have final appellate jurisdiction in all civil and criminal cases arising in the county court or before county judge's courts of all misdemeanors tried in criminal courts of record and over all cases arising in municipal courts, small claims courts and courts of justices of the peace.[4] The Metropolitan Court of Dade County was not mentioned as such when Article V was adopted.[5] We interpolate here to state that we have reached the conclusion, for the reasons which we will announce hereafter, that, insofar as the right to trial by jury is concerned, offenses denounced by the Dade County Traffic Ordinances are governed by the principles long since announced and consistently adhered to with reference to offenses against municipal ordinances. It is argued by Dade County that the provisions of the Metropolitan Charter requiring that appeals be taken to the circuit court of Dade County,[6] fix and determine the exclusive method of appeals from such decisions and that these appeals are therefore improperly before us. On the surface this appears to be a plausible argument; however, when analyzed in the light of the plain constitutional plan that judgments construing controlling provisions of the Florida Constitution, being of such great importance to all the people, should be decided by direct appeals to the one court beyond which there can be no further appeal, such argument cannot prevail; nor is it necessary in giving effect both to the spirit and letter of the Constitution to deprive the Circuit Court of Dade County of its proper appellate jurisdiction in the ordinary case arising in the Metropolitan Court. Both provisions may be given full effect by holding, as we do, that the provisions of Article V, vesting in the circuit courts final appellate jurisdiction in appeals from municipal courts, include and embrace the Metropolitan Court of Dade County; that all judgments of said court, except those which "pass directly upon the validity of a state or Federal statute or treaty or construe a controlling provision of the Florida or Federal Constitution," are properly reviewable by the Circuit Court of Dade County under both the Constitution and the Metropolitan Charter. The latter are reviewable on direct appeal here. As thus construed, there is neither inconsistency nor conflict in the two mentioned provisions of the Constitution.
Our conclusion that the Metropolitan Court of Dade County is a trial court is supported by the rationale of many cases heretofore decided by this and the district *327 courts of appeal.[7] In every instance in which any recognized court of this State had directly passed upon the validity of a State or Federal statute or treaty or construed a controlling provision of the State or Federal Constitution and the matter has been appealed directly to this Court, we have accepted jurisdiction and decided the question.[8] Trial courts, as used in the Article V of the Florida Constitution, simply mean courts other than appellate courts. In using such words in the Constitution, the conclusion is inescapable that it is meant to describe those competent tribunals under the laws of this State authorized to examine, or cause to be examined the facts put in issue in a cause for the purpose of determining such issue. An administrative individual, board or bureau is not such a court.[9]
We now direct our attention to the proposition of whether the trial court in this instance construed a controlling provision of the Florida Constitution. This, as well as the first question, is involved in the determination of the question of our jurisdiction. In the Todd case, a motion was made for trial by jury in which it was asserted that, for the offense for which Todd was charged, he was entitled to a jury trial under Sections 3 and 11 of the Declaration of Rights of the Florida Constitution. In disposing of this motion, the trial court said "* * * It is its opinion and construction of these provisions of the Constitution that they do not include within their perview [sic] the instant case at bar and the terms and language of Section 11 `in all criminal prosecutions' would not include a case in the Metropolitan Court of Dade County." In the Boyd case, the defendant Boyd filed a plea of not guilty and demanded trial by jury in which he asserted his rights under Sections 3 and 11 of the Florida Constitution to a trial by jury. Moreover, he asserted in his plea of not guilty and demand for jury trial that that portion of the Home Rule Charter of Dade County, which provides for trial by jury only in cases where the maximum fine was $500 or the maximum imprisonment was sixty days, was unconstitutional and void. In the order of the court denying Boyd's plea and motion, the court stated "* * * after hearing argument of counsel and carefully considering each of the constitutional rights raised by the defendant for *328 trial by jury and being otherwise fully advised in the premises finds that the grounds given by the defendant in his request for a jury trial are not applicable to this Court * * *." In ruling as it did in both cases, the judgments construed a controlling provision of the Florida Constitution and was, therefore, appealable directly to this Court.
Having hurdled the jurisdictional questions, we now turn to the proposition of whether the defendants were entitled to a jury trial for the offenses charged. To preface this discussion we observe that since the adoption of the Traffic Ordinance of Dade County, the municipal courts in Dade County have had no jurisdiction of traffic offenses and all municipal traffic ordinances have been superseded. In their stead stand the Metropolitan Court and the Dade County Traffic Ordinance. That the Dade County Board of Commissioners had the authority to enact these ordinances and that the Metropolitan Courts of Dade County had the jurisdiction to try those charged with offenses denounced by said ordinances have heretofore been decided by this Court.[10]
In an unbroken line of cases since Hunt v. City of Jacksonville,[11] we have held that violations of municipal ordinances were infractions, the trial for which could be conducted without a jury trial. In State ex rel. Sellers v. Parker, Supt. of the City Prison Farm,[12] the relator Sellers was tried, convicted and sentenced in the municipal court of Jacksonville to imprisonment for a period of thirty days for the offense of operating a motor vehicle while under the influence of intoxicating liquor. In a habeas corpus proceeding the relator Sellers contended, among other things, that he was entitled to discharge for reason that the Jacksonville City Ordinance was unconstitutional and invalid, as being repugnant to Sections 3 and 11 of the Declaration of Rights of the Florida Constitution, and the Fifth and Sixth Amendments of the Constitution of the United States, both of which guaranteed to the relator the right of trial by jury. This Court affirmed the order of the circuit court denying the relator's petition. In this case this Court set at rest for all time the question of right to trial by jury for the violation of offenses denounced by municipal ordinances. In that decision this Court particularly pointed out the fact, an obvious one, that the Fifth and Sixth Amendments to the Federal Constitution have no application whatever to proceedings in state or municipal courts. We further held in that case that Section 11 of the Declaration of Rights of the Florida Constitution has no application whatever to trials for violation of municipal ordinances and that Section 3 of the Declaration of Rights of the Florida Constitution was never intended to extend the right of jury trial but had the effect only of securing it in the cases in which it was a matter of right before the adoption of the Constitution. We pointed out there that trials in municipal courts were conducted generally without juries long prior to the adoption of our Constitution and, therefore, did not fall within the constitutional guarantees insuring jury trials. The point was also raised in that case that imprisonment for violation of a municipal ordinance could not be imposed except for non-payment of a duly imposed fine and that, if imprisonment could be authorized or imposed as a primary penalty for the violation of such ordinance, the defendant had a right to trial by jury.[13] In disposing of that argument, *329 we said that it was fully met in light of the fact that in England and in this country, where expressly authorized by statute, imprisonment could be imposed in the first instance for violation of municipal ordinances that were public in their nature and related to matters within proper municipal authority.
There is no contention in these Todd and Boyd cases that the offense does not properly fall within the authority of the Dade County Commission to denounce. In decisions subsequent to Hunt v. Jacksonville, supra, little, if any, comment has been made upon the subject. This Court takes judicial knowledge of the fact that literally hundreds of acts of the Legislature of this State vest in the various cities within its boundaries the power to try offenders against their ordinances without a jury.
The Metropolitan Court of Dade County is a trial court within the contemplation of Article V of the Florida Constitution. Appeals from its judgments in those instances herein discussed are appealable as a matter of right directly to this Court. Insofar as the right to trial by jury is concerned  for these offenses denounced by the ordinance of Metropolitan Dade County  the same rules apply to it as apply to municipal courts. The offense denounced is purely local in nature, the territorial limits of the court's jurisdiction not extending beyond the borders of Dade County. By the terms of Section 11(1) (f) of Article VIII of the Florida Constitution, (the Dade County Home Rule provision),[14] the jurisdiction of such courts is confined to offenses against ordinances passed by the Board of County Commissioners of Dade County. Had the Legislature determined to abolish all of the municipalities in Dade County and create one municipality embracing all of the present territory of Dade County, the municipal court of that city could have been lawfully given the power to try all offenses against the ordinances of such city without granting the right to trial by jury under the unbroken line of authority here discussed. The Metropolitan Court of Dade County is in exactly the same category.
We have also held that if offenses against municipal ordinances, which are local in their territorial operation and effect, are held to constitute crimes, there would be no uniformity in the criminal laws of the State. This is further augmented by the many decisions holding that violations of local laws, ordinances and regulations do not constitute crimes.[15] *330 Theisen v. McDavid, City Marshall, 1894, 34 Fla. 440, 16 So. 321, L.R.A. 234; State v. Parker, 1924, 87 Fla. 181, 100 So. 260; Hunt v. City of Jacksonville, 1894, 34 Fla. 504, 16 So. 398; Gillooley v. Vaughn, 1926, 92 Fla. 943, 110 So. 653; State v. Vaughn, 1926, 92 Fla. 963, 110 So. 659; Orr v. Quigg, 1938, 135 Fla. 653, 185 So. 726; Wright v. Worth, 1922, 83 Fla. 204, 91 So. 87, 89.
In Wright v. Worth, Judge, after quoting the language in Section 11 of the Declaration of Rights of the Florida Constitution (providing for the right of trial by jury) and Section 34 of Article V (authorizing the Legislature to establish in incorporated towns and cities courts for the punishment of offenses against municipal ordinances), the Court said:
"The language of section 11 of the Declaration of Rights is so different from that of section 34 of article 5, that it is manifest the words `criminal prosecutions * * * in the county where the crime was committed' in section 11, Declaration of Rights, have no reference to `the punishment of offenses against municipal ordinances' under section 34 of article 5.
"The Constitution contains no express limitations upon the power of the Legislature to prescribe the procedure for municipal courts. Under section 20, art. 3, special laws may be enacted `regulating the practice' of municipal courts."
Historically, courts of summary jurisdiction were authorized to hear, try, determine and adjudge common law offenses without a jury.[16] Mr. Justice White of New Jersey, speaking for the court in the case of Katz v. Eldredge,[17] states the premise with *331 such logic and clarity that we adopt it as a part of this opinion:
"I think the real underlying historically established test depends upon the character of the offence involved rather than upon the penalty imposed. The offence must be a petty and trivial violation of regulations established under the police power of the state, in order that the offender may be summarily tried, convicted, and punished without indictment by a grand jury and without trial by a petit jury. It must, of course, be assumed that the punishment for such a petty and trivial offence will also be comparatively petty and trivial, otherwise it would violate another provision of the state Constitution, which prohibits cruel and unusual punishments. But, assuming that the punishment will bear proper relation to the seriousness of the offence, the theory, as I understand it, which gave rise to the distinction at common law and in subsequent statutes, is that the convenience and benefit to the public resulting from a prompt and inexpensive trial and punishment of violations of petty and trivial police power regulations are more important than the comparatively small prejudice to the individual resulting from his being deprived of the safeguard of indictment before having to answer and of trial by a jury when held to answer. This, of course, is the converse of the rule with regard to serious offences, crimes, and misdemeanors, where for the preservation of the liberties of the people, the security afforded the individual by his right to trial by jury is more important than the mere convenience of the public arising from a speedy and inexpensive summary trial."

Conclusion.
We summarize our holdings here as follows:
1. The Metropolitan Court of Dade County is a trial court as contemplated by Article V of the Florida Constitution and all final judgments of said courts directly passing upon the validity of a state statute or a Federal statute or treaty or construing a controlling provision of the Florida or Federal Constitutions are appealable directly to the Supreme Court of Florida.
2. The judgment in these cases construed a controlling provision of the Florida Constitution in holding that Sections 3 and 11 of the Declaration of Rights of the Florida Constitution had no application to the trial of these two defendants for the offenses charged against them.
3. That the trial court did not err in holding that for the offenses of which these two defendants had been charged, Sections 3 and 11 of the Declaration of Rights of the Florida Constitution were inapplicable.
For the reasons above stated, the judgments in both the Todd and Boyd cases are hereby affirmed.
TERRELL, ROBERTS, THORNAL and O'CONNELL, JJ., concur.
THOMAS, C.J., agrees to conclusion.
HOBSON, J., not participating.
THOMAS, C.J., agrees to conclusion.
I agree to conclusion, but I think jurisdiction is based on a construction of appropriate sections of Article VIII.
NOTES
[1] The following are the portions of the Traffic Ordinance pertinent to the questions involved in this appeal:

"19.01-1 It is unlawful for any person who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs, when affected to the extent that his or her normal faculties are impaired, to drive or be in the actual physical control of any vehicle within this county."
"19.01-2 Every person who is convicted of a violation of Section 19.01-1 shall be punished by imprisonment for not less than 48 hours nor more than 60 days and by a fine of not less than One Hundred ($100.00) Dollars, nor more than Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. On a second or subsequent conviction he shall be punished by imprisonment for not less than thirty (30) days nor more than six months and, in the discretion of the court, a fine of not more than One Thousand ($1,000.00) Dollars, on a third conviction he shall be punished by imprisonment for a period of one year."
[2] Sections 3 and 11 of the Declaration of Rights, Florida Constitution, F.S.A.:

"Section 3. Trial by jury inviolate.  The right of trial by jury shall be secured to all, and remain inviolate forever."
"Section 11. Rights of accused; speedy trial; etc.  In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed, and shall be heard by himself, or counsel, or both, to demand the nature and case of the accusation against him, to meet the witnesses against him face to face, and have compulsory process for the attendance of witnesses in his favor, and shall be furnished with a copy of the indictment against him."
[3] Article V, Section 4(2) of the Florida Constitution, pertinent to this question provides:

"Appeals from trial courts may be taken directly to the supreme court, as a matter of right, * * * from final judgments * * * construing a controlling provision of the Florida * * constitution."
[4] Article V, Section 6(3), pertinent to this question, provides that circuit courts:

"shall have final appellate jurisdiction in * * * all cases arising in municipal courts."
[5] These courts were created by the Charter of Metropolitan Dade County adopted pursuant to the authority granted in Article VIII, Section 11, Florida Constitution, which was adopted in the 1956 General Election. This Article and Article V were adopted at the same election. Article VIII authorized the creation of courts in Dade County "with jurisdiction to try all offenses against ordinances passed by the Board of County Commissioners of Dade County." The Charter creating these courts was adopted May 21, 1957. The maximum punishment which may be given on conviction for a violation of any ordinance is $1,000 fine or one year in jail or both. In all offenses punishable by fine of more than $500 or imprisonment more than sixty days, the accused is entitled to a jury trial. Section 6.02 D Metropolitan Charter. Appeal shall be taken to the circuit court. Section 6.02 F, Metropolitan Charter.
[6] Ibid. note 5.
[7] Puleo v. State, Fla.App. 1959, 109 So.2d 39, 45, held: "There is no question but that the Criminal Court of Record of Hillsborough County is a trial court. It is clear that the appeal could not be taken to the Supreme Court of the State. The appellate jurisdiction of the circuit court with reference to appeals from criminal courts of record is limited to `all misdemeanors tried in criminal courts of record.' We had before us in the case of State v. J.K., Fla.App. 1958, 104 So.2d 113, the question of whether an appeal from the juvenile court should be taken to the circuit court or to the Second District Court of Appeal, and we held that as we construed a juvenile court to be a trial court, under the applicable provisions of the Constitution, appeal would lie to the district court of appeal." In re C.E.S., Fla.App. 1958, 106 So.2d 610, on page 611, the court held: "We hold that a juvenile court is a `trial court, within the meaning of the quoted constitutional provision (Const. Art. V, Sect. 5[3])." In State v. Furen, Fla. 1960, 118 So.2d 6, 8, we held: "Appellants contend that when the Circuit Court reviewed the order of the County Authority it was sitting as a trial court and we think this is correct." In State v. J.K., Fla.App. 1958, 104 So.2d 113, 115, the court held, "It will be observed from the foregoing enumeration of appellate powers given to the Supreme Court, to the courts of appeal and to the circuit courts, that all appeals from trial courts must be taken to the court of appeal unless, under the Constitution such appeal may be taken direct to the Supreme Court or to a circuit court." In State v. Bruno, Fla. 1958, 104 So.2d 588 we held that the Criminal Court of Record of Dade County was a trial court. Under Article V, Section 6(3) (Ibid. note 4), appeals from this court from convictions for misdemeanors must be taken to circuit court as court having final appellate jurisdiction.
[8] Ibid. note 7.
[9] State v. Furen, Fla. 1960, 118 So.2d 6.
[10] Insofar as the traffic ordinance is concerned, see Miami Shores Village v. Cowart, Fla. 1958, 108 So.2d 468; City of Miami Beach v. Cowart, Fla. 1959, 116 So.2d 432. As to the Metropolitan Courts see City of Miami v. Keton, Fla. 1959, 115 So.2d 547.
[11] 1894, 34 Fla. 504, 16 So. 398.
[12] 1924, 87 Fla. 181, 100 So. 260, 264.
[13] This argment was premised on the provisions of Section 19 of the Bill of Rights of the Florida Constitution, viz.:

"Section 19. Slavery prohibited; penal servitude.  Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party has been duly convicted, shall ever be allowed in this State."
[14] Ibid. note 5.
[15] In the case of Roe v. State, 1928, 96 Fla. 723, 119 So. 118, 121, Justice Brown stated:

"* * * It appears that the weight of authority is quite well settled to the effect that, in order for a conviction of crime to be admissible as affecting the credibility of a witness, it must be a conviction of an offense against `the law of the land'; that no offense is a crime, as used in this sense, which does not violate the law of the land; and it is well established that a conviction for a violation of a municipal ordinance does not come within this category and is not admissible as affecting the credibility of a witness * * * Nor is the mere fact that the violation of a municipal ordinance was based upon facts which also constituted a violation of a state criminal statute considered sufficient. It must be a conviction of a crime, in violation of a law of a state  a case wherein the prosecution runs in the name of the state.
"* * * our decisions recognize that there are essential differences between state laws and municipal ordinances. * * * This holding is in harmony with section 20 of article 3 of the Constitution, which says that the Legislature shall not pass any local law for the punishment of crime or misdemeanor. If offenses against municipal ordinances, which are purely local in their territorial operation and effect, should be held to constitute crimes, there would be no uniformity in the criminal laws of the state, and the intent of the constitutional provision would be defeated. But as offenses against municipal ordinances providing penalties for certain acts in violation thereof are neither crimes nor misdemeanors, strictly speaking, within the meaning of the constitutional provision, * * *." (Emphasis supplied).
[16] Halsbury's Laws of England, 37 copious volumes, with supplemental volumes down to date purporting to be a complete statement of the whole law of England, devotes an entire chapter to the jurisdiction of courts of summary jurisdiction. It appears that in England, since the year 1677 down to the present date, a single Magistrate (Justice of the Peace) was authorized to hear, try, determine and adjudge common law offenses without a jury when authorized by Parliament and the punishment was not exceeding one hundred pounds or three months imprisonment. 21. Halsbury's Laws of England, pp. 564-657, Section 1037 (1936).

The Right Honorable, The Earl of Halsbury, Lord High Chancellor, of Great Britain (1885-1905)  (21 Halsbury's Laws of England, 564-657), gives the following references:
Summary Jurisdiction Act, 1848 (11 & 12 Vict. c. 43), § 29;
Summary Jurisdiction Act, 1879 (42 & 43 Vict. c. 49), § 20(9);
Vagrancy Act, 1824 (5 Geo. 4, c. 83), § 5;
Sunday Observance Act, 1677 (29 Car. 2, c. 7), § 2;
Profane Oaths Act, 1745 (19 Geo. 2, c. 21), §§ 1, 3, 7;
Game Act, 1831 (1 & 2 Will. 4, c. 32), §§ 30, 31;
Bread Act, 1836 (6 & 7 Will. 4, c. 37), §§ 5 et seq.;
Railway Regulation Act, 1840 (3 & 4 Vict., c. 97), §§ 13, 16;
(Parliament provided for drunk railway engineer to be tried before Justice of Peace without jury  penalty not exceeding 10 pounds, or in default not exceeding two calendar months).
Larceny Act, 1861 (24 & 25 Vict. c. 96), §§ 12, 14, 15, 17, 21, 22;
Malicious Damage Act, 1861 (24 & 25 Vict. c. 97), § 22;
Town Police Clauses Act, 1847 (10 & 11 Vict. c. 89), §§ 28, 29;
Coinage Offenses Act, 1861 (24 & 25 Vict. c. 99), §§ 23, 26, 27;
Vaccination Act, 1867 (30 & 31 Vict. c. 84), § 31;
Fisheries Act, 1868 (31 & 32 Vict. c. 45), § 57;
Gun License Act, 1870 (33 & 34 Vict. c. 57), § 9;
Licensing Act, 1872 (35 & 36 Vict. c. 94), § 12.
[17] 1922, 97 N.J.Law 123, at pages 150, 151, 117 A. 841, 852.