141 So.2d 269 (1962)
Alberta SCHERMERHORN, Lois Devita, Joyce E. Thuro, and Larry Stark, Appellants,
v.
LOCAL 1625 OF the RETAIL CLERKS INTERNATIONAL ASSOCIATION, AFL-CIO; William Travis, President of Local 1625 of the Retail Clerks International Association, AFL-CIO; and Food Fair Stores, Inc., Southern Division, a Pennsylvania corporation, authorized to do business in Florida, Appellees.
No. 31465.
Supreme Court of Florida.
April 25, 1962.
*270 Bernard B. Weksler, Miami, for appellants.
Claude Pepper Law Offices, Miami, S.G. Lippman, Washington, D.C., Tim L. Born stein, Washington, D.C., and Kaplan, Ser & Abrams, Miami, for Local 1625 of Retail Clerks International Ass'n, AFL-CIO, et al.
*271 Aronovitz, Aronovitz & Haverfield and Robert M. Haverfield, Miami, for Food Fair Stores, Inc., Southern Division.
Bolles & Prunty, Miami, for John Hancock Mut. Life Ins. Co.
Allen Clements, Miami, J. Albert Woll, Washington, D.C., and Theodore J. St. Antoine, Washington, D.C., for American Federation of Labor and Congress of Industrial Organizations and Florida State Federated Labor Council.
John L. Kilcullen, Washington, D.C., and T. David Burns, Tallahassee, for Florida Right to Work Committee, amicus curiae.
HOBSON, Justice.
The appellants, plaintiffs in the action below, sought by an action in equity to enjoin the appellee labor union and Food Fair Stores from enforcing the provisions of an "Agency Shop" clause contained in a collective bargaining contract between the union and Food Fair. The contract provision under attack provides that employees who are not union members "shall be required to pay as a condition of employment, an initiation service fee and monthly service fees to the union," such amounts being equal to the initiation fees and monthly dues for union members. The appellants are nonunion employees of Food Fair. It is their contention that the agency shop provision of the contract violates the "right to work" provision of the Declaration of Rights of the Florida Constitution, Section 12, F.S.A.
A motion to dismiss the complaint was filed on the grounds, first, that the matter was one within the exclusive jurisdiction of the National Labor Relations Board by virtue of the provisions of 29 U.S.C.A. §§ 141-188, and also that the contract provision does not violate Section 12 of the Declaration of Rights.
The trial court granted the motion to dismiss and entered a final order wherein it was stated in part:
"* * * the Complaint * * * is hereby dismissed for the reason that the court finds that the agency shop clause, Section 2, Article 19 of the contract between the defendant Union and defendant Food Fair is not violative of the Florida `right to work law' as contained in Section 12 of the Declaration of Rights of the Constitution of Florida * * *."
The cause was appealed to the District Court of Appeal, Third District. The District Court heard arguments and filed an opinion in which the decree of the chancellor was reversed and the cause remanded. Before that decision became final the appellees filed a motion to the court to withdraw its opinion and transfer the appeal to this court, asserting that the appeal should have been made directly to this court because the decision was one "construing a controlling provision of the Florida Constitution." Article V, Section 4, Florida Constitution. The District Court granted the motion and transferred the cause to this court, and entered an order withdrawing its opinion, conditioned upon this court's accepting jurisdiction. The initial question with which we are faced is whether we have jurisdiction to determine this cause on a direct appeal.
In our judgment, the chancellor's order quoted above clearly and unquestionably construes Section 12, Declaration of Rights. Unlike in Milligan v. Wilson, Fla., 104 So.2d 35, and Carmazi v. Board of County Commissioners, Fla., 104 So.2d 727, the issues in the instant case required the trial court to rule directly on a constitutional provision. Moreover, the fact that there was such a direct ruling appears from the face of the lower court's order. The question is whether the ruling amounts to a construction of Section 12, Declaration of Rights. As stated in Armstrong v. City of Tampa, Fla., 106 So.2d 407, and in Cohen v. State, Fla., 121 So.2d 155, the trial court will be held to have construed a controlling provision of *272 the constitution if the court undertakes to "eliminate existing doubts arising from the language or terms of the constitutional provision." In the instant case, there were "existing doubts," inasmuch as it has never before been determined by an appellate court in this State whether an agency shop clause contravenes the "right to work" amendment of our Constitution. The trial court undertook to eliminate these doubts by squarely holding that the contract clause was valid.
The Chancellor did not merely apply the facts "to a recognized clear-cut provision of the Constitution," as in Page v. State, Fla., 113 So.2d 557, because the right to work clause is not "clear-cut" when considered in connection with the facts presented in the instant case. On the contrary, the trial court was confronted with, and decided, a legitimate constitutional question of first impression.
In Boyd v. Dade County, Fla., 123 So.2d 323, we recognized that it was the plain constitutional plan of Article V, Section 4, "that judgments construing controlling provisions of the Florida Constitution, being of such great importance to all the people, should be decided by direct appeals to the one court beyond which there can be no further appeal." (Emphasis supplied.) Certainly, the constitutional question decided in the instant case is of no less importance to the general public merely because the chancellor did not see fit to launch into an extended dissertation giving his reasons for construing the constitutional provision as he did. Moreover, since the order on its face shows that the constitution was construed, this is not a case where it is necessary that we return the cause to the chancellor for a determination as to the basis of his ruling.
In the case of Boyd v. County of Dade, Fla., 123 So.2d 323, we held that we had jurisdiction on direct appeal because the trial court had construed a controlling provision of the Florida Constitution in its order denying a motion for a jury trial in the Metropolitan Court of Dade County. The pertinent portion of the trial court's order was as follows:
"`* * * after hearing argument of counsel and carefully considering each of the constitutional rights raised by the defendant for trial by jury and being otherwise fully advised in the premises finds that the grounds given by the defendant in his request for a jury trial are not applicable to this Court. * *.'"
Since, by virtue of the above quoted order, it was held that this court had jurisdiction on direct appeal, it is equally clear in the instant case that the trial court construed a controlling provision of the Florida Constitution within the meaning of Article V, Section 4, and that we therefore possess jurisdiction to determine this cause on direct appeal.
Upon full consideration of the arguments and briefs of the parties, as well as the briefs of the various amici curiae, we are of the opinion that the judgment of the trial court must be reversed for the reasons set forth herein and in the excellent and learned opinion prepared for the District Court of Appeal, Third District, by Judge CARROLL, which is hereinafter set out in haec verba.
The portion of Section 12 of the Declaration of Rights which is in issue, reads as follows:
"The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."
This section clearly bestows on the workingman a right to join or not to join a labor union, as he sees fit, without jeopardizing his job. Inasmuch as the *273 Constitution has granted this right, the agency shop clause is repugnant to the Constitution in that it requires the non-union employee to purchase from the labor union a right which the Constitution has given him. The Constitution grants a free choice in the matter of belonging to a labor union. The agency shop clause contained in the contract under consideration purports to acknowledge that right, but in fact, abrogates it by requiring the non-union worker to pay the union for the exercise of that right or, in the alternative, to be discharged from his employment. Such an arrangement is palpably and totally inconsistent with the freedom of choice contemplated by our Declaration of Rights, Section 12.
The appellees contend that, except for the "agency-shop" provision, the non-union employees of the appellant Food Fair would be "free riders," that is, they would reap the benefits of union representation without having to bear any of the cost thereof. This argument is grounded on the fact that the union is, by law, the bargaining agent for all employees  those who do not belong to the union as well as those who do. 29 U.S.C.A. § 159. This argument may be answered by reference to the section of the Constitution under consideration. Clearly, it is the intent of this section to leave as a matter for individual determination and preference the question of whether the worker will derive any benefit from association with a labor union. The choice is his to make. Presumably, the appellants in the instant case have decided that union membership is not an overall benefit to them personally, else they would have joined.
The appellees further assert that our state courts are without jurisdiction to determine this matter, because of the pre-emption by the federal government of the field of labor relations, by virtue of the Labor Management Relations Act, 29 U.S.C.A. §§ 141-188. We hold, as did the Supreme Court of Kansas in the case of Higgins v. Cardinal Manufacturing Company, 188 Kan. 11, 360 P.2d 456, that Section 14(b) of the Taft-Hartley Act [29 U.S.C.A. § 164(b)] preserves the jurisdiction of the states in matters involving state "right-to-work" provisions. It is true that Section 14(b) specifically deals only with "agreements requiring membership in a labor organization as a condition of employment * * *." However, it is not to be presumed that Congress would preserve to the states the field of right-to-work legislation, while, at the same time, intending that unions and management could, by the use of subterfuge of an agency shop clause, circumvent and, in effect, nullify a paramount provision of the organic law of any of the several states.
A recent decision of the Federal District Court of Nevada, as yet unreported, squarely supports our holding herein regarding the power of the states under Section 14(b) to prohibit the enforcement of agency shop agreements. In that case, the court held that although the literal language of Section 14(b) only reserves to the states the right to prohibit agreements making union membership compulsory, it would frustrate the congressional intent to construe that section so as to prevent the states from also prohibiting agency shop agreements. In its opinion, the District Court stated:
"Section 14(b) would be bereft of meaning if we were to construe it in a fashion which would render the states powerless to make illegal that type of union security agreement which imposes liabilities on the working man which, realistically, are the same liabilities which, under the section, the states may remove." Amalgamated Association of Street, Electric Railway and Motor Coach Employees, Division 1225 v. Las Vegas-Tonopah-Reno Stage Line, Inc., D.C.Nev. 1962, 202 F. Supp. 726.
*274 Having thus expressed the opinion of this court on the question of its jurisdiction as well as the chief issues involved in this case, we hereby approve and adopt as our own the following unpublished opinion by the District Court of Appeal, Third District, prepared by CARROLL, J.:
"The appellants, who were plaintiffs below, filed suit in equity for themselves and for all others similarly situated, against Food Fair Stores, Inc., Southern Division, a Pennsylvania corporation doing business in Florida, and the appellee labor union and its president, to enjoin the application to plaintiffs and other non-union employees of an `agency shop contract' between the employer and the union.[1] The contract provided that employees who were not members of the union `shall be required to pay as a condition of employment, an initiation service fee and monthly service fees to the union,' being the amounts union members pay for initiation and for monthly dues.
"The complaint charged the contract violated the right to work provisions of the Florida Constitution[2] and statutes.[3] The trial court rejected that contention and rendered judgment for defendants, holding that the agency shop contract was not in violation of the Florida right to work law, and the plaintiffs appealed.
"In a motion to dismiss in the trial court and again here the defendants-appellees contended that the controversy is one within the jurisdiction of the National Labor Relations Board,[4] under § 8 of the Act (29 U.S.C.A. § 158), and that as a consequence we are required to yield jurisdiction to the Board.[5]
"This question as to jurisdiction has been decided contrary to that contention in three recent cases of this kind in appellate courts in Arizona, Indiana and Kansas.[6] We hold, as was held in those cases, that the Algoma case[7] of 1949 which sanctioned state regulation of union security agreements impinging on *275 state right to work laws has not been overruled in that respect by the subsequent decisions of the United States Supreme Court dealing with this question of pre-emption. Not only has Algoma not been expressly overruled, but it has repeatedly been recognized and cited with apparent approval in later United States Supreme Court cases. See Colgate-Palmolive-Peet Co. v. N.L.R.B., 338 U.S. 355, 70 S.Ct. 166, 94 L.Ed. 161, 168; Garner v. Teamsters C. & H. Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, 238; Weber v. Anheuser-Busch, 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546, 556; Guss v. Utah L.R.B., 353 U.S. 1, 77 S.Ct. 598, 1 L.Ed.2d 601, 607; Local 24 of I.B. of T.C.W. v. Oliver, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312, 321; San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d [775] 785, 788 (concurring opinion). As late as 1959, in the Oliver case, in footnote 10, it was said (358 U.S. at 296 [79 S.Ct. at 305]):
`In Algoma, state law was allowed to operate to restrict a provision of a collective bargaining contract only after it was found after an exhaustive examination of the legislative history of the Wagner Act that Congress intended to leave the special subject of the legality of maintenance of membership clauses up to the States through § 8(3) of that Act, 49 Stat. 452. Questions of the nature that we consider today were expressly left open. 336 US at 312 [69 S.Ct. at 590].'
"This exception from the federal pre-emption doctrine seems an obvious one brought about by § 14(b) of the Federal Act,[8] which specifically authorizes and recognizes the validity of right to work laws of the several states. We agree with the statement of the Kansas Supreme Court on this point, where it was said:
`There would be little point in permitting the states to enact such [right to work] laws if they could not be enforced by the states.'[9]
"The chancellor was eminently correct in assuming jurisdiction and in not ceding it to the Board in this instance. But we hold that the chancellor was in error in ruling that this agency shop contract does not violate the Florida right to work law.
"Appellants contend the agency shop contract denies or abridges their right to work in violation of the Florida right to work law, by exacting tribute from them because of their non-membership in the union as a condition of their employment or continued employment.
*276 "Appellees argue that because the union has gained the right to act as bargaining agent for all of the employees it is only fair that the non-member sector of the employees should have to pay money to the union as a condition of their right to work, to help the union defray the cost of such bargaining.
"Regarding the intent and policy of this state's right to work law, the Supreme Court of Florida in Local Union No. 519, etc. v. Robertson, Fla. 1952, 44 So.2d 899, 902, said:
"`By these provisions of the Constitution and the statutes the public policy of the State of Florida with respect to labor activities and labor opportunities has been set forth and defined. Under these provisions it is the declared public policy of the State that all working men, whether union or non-union, shall be considered on an equal footing with respect to labor opportunities. They are guaranteed complete freedom of decision in whether to join or refrain from joining any labor organization. No person or organization may deny them the right of obtaining or retaining employment, nor may the right be abridged, by reason of membership or nonmembership in any labor organization. They are not to be coerced or intimidated in the enjoyment of their legal rights, including the right of free decision as to whether or not they will join a union, and any person or labor organization who so coerces or intimidates them is to be deemed guilty of a crime punishable by fine or imprisonment, or both.' [Italics supplied.]
"Under § 12 of the Declaration of Rights of Florida what is prohibited is the denial or abridgement of one's right to work `on account of membership or non-membership in any labor union, or labor organization.' When, because of his non-membership, an employee is required to pay labor union dues, or sums equal to the dues, as a condition of employment or continued employment, his right to work is `abridged.'
"Anything which imposes a charge or expense upon the free exercise of a right, abridges it in the sense of curtailing or lessening the use or enjoyment of that right. As defined in Webster's New International Dictionary, to abridge is `to deprive; to cut off; to diminish, curtail.' And `abridge' is defined in The Oxford English Dictionary as being `to curtail, to lessen, to diminish (rights, privileges, advantages, or authority.)' The Louisiana Supreme Court adopted this meaning and definition of abridged as contained in the right to work law of that state,[10] saying:
"`The public policy of Louisiana is expressed in the Right to Work Act, Section 1, supra. In analyzing "the right of a person or persons to work shall not be denied or abridged on account of membership or nonmembership in any labor union or labor organization", we must look to the meaning of the word "abridged". A study of various law dictionaries and Webster's Dictionary will show that the Legislature intended the word "abridged", as used in the Act, to mean "diminished, reduced, curtailed, or shortened".'
"The natural and reasonable interpretation of the Florida constitutional amendment, which prohibits compulsory membership in a labor organization as a condition of employment or of continued employment, is that it necessarily forbids forcing a non-member employee to pay union initiation fees, dues and assessments or equivalent amounts as a condition of employment or of continued employment. A contrary construction of the right to work law would leave it little or no useful purpose to serve.[11]
*277 "For the reasons stated, we are impelled to hold that the `agency shop' provision in the contract here under attack violates § 12 of the Declaration of Rights of Florida, which declares the right to work policy of this state. Accordingly, the decree is reversed and the cause remanded for further proceeding not inconsistent herewith.
"Reversed and remanded."
Regarding Footnote 9 of the foregoing opinion, it should be pointed out that the NLRB has since receded from its opinion in the General Motors Corporation case, 130 N.L.R.B. No. 54. See 133 N.L.R.B. No. 21. Likewise, it should be noted that on December 15, 1961, the Supreme Court of the United States denied a petition for certiorari in the case of Higgins v. Cardinal Manufacturing Company, supra, Footnote 6.
For the reasons stated in our own opinion, and in the opinion adopted by us, the decree is reversed and the cause remanded for further proceedings not inconsistent herewith.
It is so ordered.
ROBERTS, C.J., DREW and THORNAL, JJ., and PARKS, Circuit Judge, concur.
THOMAS, J., dissents because of lack of jurisdiction.
O'CONNELL, J., dissents as to jurisdiction, concurs as to merits.
O'CONNELL, Justice (dissenting).
I must dissent because I am of the opinion that this court does not have jurisdiction to decide this case. However, I fully agree with the opinion on the merits of this cause.
NOTES
[1] "Through representing the majority, the union had gained the right under the law to act as bargaining agent for all of the employees. § 8(a) (5), National Labor Relations Act, 29 U.S.C.A. § 158(a) (5); § 9(a), 29 U.S.C.A. 159(a).
[2] "`* * * The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer. * * *' Fla. Const., Declaration of Rights, § 12, 25 F.S.A.
[3] "§§ 447.01 and 447.09, Fla. Stat., F.S.A.
[4] "Essential to that contention was that the business involved be one engaged in interstate commerce. The record shows no allegation or reference to the subject matter being within the flow of interstate commerce. But we proceed on the assumption that it is, since the parties so treated it in argument. See Wood, Wire & Metal Lathers International Union v. Babcock Co., decided July 31, 1961, [Fla. App.,] 132 So.2d 16.
[5] "This court has repeatedly recognized the doctrine of federal pre-emption and ceded jurisdiction to the Board in cases where it was shown to be required. See Amalgamated Clothing Workers, etc. v. Donald S. La Vigne, Inc., Fla.App. 1958, 111 So.2d 462; International Ladies Garment W.U. v. Sherry Mfg. Co., Fla. App. 1959, 115 So.2d 27; International Hod Carriers', etc. v. Heftler Const. Co., Fla.App. 1959, 116 So.2d 30; North Dade Plumbing Inc. v. Bowen. Fla.App. 1960, 116 So.2d 790; I[nternational] B[roth.] of E[lec.] W[orkers] Local 349 v. Shires, Fla.App. 1960, 123 So.2d 259; Casteel v. United Brotherhood of Carpenters & Join., Fla.App. 1960, 125 So.2d 123; Wood, Wire & Metal Lathers International Union v. Babcock Co., supra.
[6] "Sheet Metal Workers International Ass'n. v. Nichols, (1961), 89 Ariz. 187, 316 [360] P.2d 204; Meade Electric Company v. Hagberg, (1959), 129 Ind. App. 631, 159 N.E.2d 408; Higgins v. Cardinal Manufacturing Company, (1961), 188 Kan. 11, 360 P.2d 456.
[7] "Algoma P. & V. Co. v. Wisconsin Emp. Rel. Bd., 336 U.S. 301, 69 S.Ct. 584, 93 L.Ed. 691.
[8] "`Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial law.' 29 U.S.C.A. § 164(b).
[9] "In support of the argument for pre-emption appellees referred to a recent instance in which the National Labor Relations Board took jurisdiction of a matter which was claimed to have dealt with the question of an agency shop contract vis-a-vis a state right to work law. The ruling involved (130 N.L.R.B. No. 54), which concerned General Motors Corporation, was made in February of 1961, and is found in 4 C.C.H.Law Rep., N.L.R.B. decision § 9663, p. 14,978. Examination of that ruling shows the question before the Board was not whether the making and application of an agency shop contract was violative of a state right to work law (which question, as recognized in the Algoma case is reserved to the state for determination), but the question before the Board was whether, in a state having a right to work law, refusal of an employer to bargain with a union with respect to inclusion of an agency shop clause in a bargaining contract was an unfair labor practice. Interestingly, the Board upheld the employer's refusal to bargain under those circumstances. Appellees strongly urged that such ruling of the Board constituted evidence and precedent for pre-empting jurisdiction of the matter involved here, but from the nature of the question which was before the Board, as we have pointed out, the action of the Board in that instance could not be given the effect which the appellees assigned to it.
[10] "Piegts v. Amalgamated Meat Cutters, etc., 228 La. 131, 81 So.2d 835, 838.
[11] "Accord, Sheet Metal Workers International Ass'n v. Nichols, supra, 89 Ariz. 187, 316 [360] P.2d 204; Higgins v. Cardinal Manufacturing Company, supra, 188 Kan. 11, 360 P.2d 456. Contra, Meade Electric Company v. Hagberg, supra, 129 Ind. App. 631, 159 N.E.2d 408.