CITY OF LAWRENCE, INDIANA *v.* CITY OF INDIANAPOLIS, INDIANA; MARY D. AIKINS, AUDITOR OF STATE OF INDIANA; LAWRENCE L. BUELL, TREASURER OF MARION COUNTY, INDIANA, FOR AND ON BEHALF OF THE DEPARTMENT OF TRANSPORTATION OF CONSOLIDATED FIRST CLASS CITY OF INDIANAPOLIS.

[No. 2-174A27. Filed December 18, 1975. Rehearing denied January 20, 1976. Transfer denied June 21, 1976.]

*William D. Hall,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, for appellee Mary D. Aikins, Auditor of State, *Gary R. Landau, Kent S. Arvin,* Indianapolis, for appellees City of Indianapolis, and Lawrence L. Buell, Treasurer of Marion County.

WHITE, J.—The appellant City of Lawrence (Lawrence), a third class city located in Marion County, instituted this action by filing its complaint alleging that since 1967 it had not received its proper share of distributions made from the cigarette tax fund, that a portion of said proper share had been wrongfully paid by the Auditor of State first to the Mass Transportation Authority of Greater Indianapolis and subsequently to the Department of Transportation of the Consolidated City of Indianapolis, and that the recipients of said funds have been and are wrongfully withholding said funds from Lawrence. The complaint sought to have the funds alleged to have been improperly distributed declared the property of Lawrence, that the holders of said funds be ordered to turn said funds and interest thereon over to Lawrence, and that the Auditor of State be ordered to make

future distributions of cigarette tax funds in accord with law.

The trial court entered summary judgment in favor of the defendants and Lawrence has appealed that judgment.

We affirm.

The two questions presented by Lawrence's complaint are straightforward questions of statutory construction which are buried in prolix pleadings. The first question involves two enactments of the 1967 Regular Session of the General Assembly, chapter 296, which amended the cigarette tax act, and chapter 311, which created a Mass Transportation Authority in Marion County.[1] The question is: In view of the aforementioned enactments, is it Lawrence or is it the Mass Transportation Authority that is the proper recipient of certain moneys distributed from the cigarette tax fund? The second question involves the effect of Acts of 1969, chapter 173 (Uni-Gov), on the distribution of the same moneys. The question is: Is it Lawrence or is it the Department of Transportation of the Consolidated City of Greater Indianapolis (which assumed the duties of the Mass Transportation Authority) that is the proper recipient of certain moneys distributed from the cigarette tax fund?

## I.

The cigarette tax act (Acts of 1947, ch. 222) levies a tax on the sale of cigarettes and has evolved by amendment from a simple source of money for the State's general fund into a source of money to be distributed in a somewhat complex pattern to the State general fund, to various specified state agencies, and to local municipal corporations for specified purposes. We need not delve into the development of the pattern of distribution of the fund, nor even describe

---

1. Both Acts were approved on March 11, 1965. Chapter 296, amending the cigarette tax act, declared an emergency and became effective July 1, 1965; Chapter 311, creating the Mass Transportation Agency, declared an emergency and became effective upon passage.

that pattern in detail. It is sufficient to note that prior to the effective date of the 1967 Acts in question, the cigarette tax act, as then last amended by Acts of 1965, ch. 225, created a cigarette tax fund and, in three separate sections, appropriated portions of that fund to the cities and towns in Indiana. Section 27b appropriated a portion of the cigarette tax fund to the general funds of cities and towns; Sections 27c and 27d each appropriated a portion of the cigarette tax fund to the cumulative capital improvement funds of the cities and towns. In all three instances the appropriation was to be allocated among and distributed to the cities and towns in proportion to their populations.

The 1967 amendment of the cigarette tax act, Acts of 1967, ch. 296 (hereinafter called the "Tax Amendment"), did not change the basic distribution of the cigarette tax fund, but it did add special provisions concerning the distribution to be made to the Cumulative Capital Improvement Fund of Indianapolis.

Section 27d was amended by adding to it the following language:

"Except, that, on and after July 1, 1967, the sum of Three Hundred Fifty Thousand Dollars out of the appropriation theretofore made for distribution to the Cumulative Capital Improvement Fund of cities of the first class pursuant to this section is hereby appropriated to the Capital Improvement Board of Managers of the county created by Chapter 326 of the Acts of the Indiana General Assembly of 1965 to be used for the payment of principal and interest on any bonds issued or to be issued pursuant to the authority of said Chapter 326 of the Acts of 1965 or any acts amendatory or supplemental thereto. Said sum shall be distributed semi-annually on the first day of June and December in each year and paid to the treasurer of such County upon warrants issued by the Auditor of State. The County Treasurer shall deposit all amounts received pursuant to this section in the Capital Improvement Bond Fund created by Section 13 of said Chapter 326 of the Acts of 1965. It is the intent of the General Assembly that said appropriation to such board of Managers shall be deducted from the distributive share of

cities of the first class only, and nothing herein shall be construed as reducing the amount theretofore appropriated for distribution to the Cumulative Capital Improvement Fund of other cities and towns of the state.

"Provided further, that the remaining funds available for distribution to the Capital Improvement Fund of cities of the first class pursuant to this Act is hereby appropriated to the Metropolitan Thoroughfare Authority created pursuant to Acts 1963, ch. 386, or to any thoroughfare or transportation Authority subsequently created in a city of the first class for use by such Authority. Said funds shall be distributed semi-annually on the first day of June and December each year and paid to the treasurer of the county in which such Authority is situated upon warrants issued by the Auditor of State. The county treasurer shall accept said funds pursuant to said Act and the custody of such funds shall be governed by the provisions of said Act. It is the intent of the General Assembly that said appropriation to such Authority shall be appropriated from the distributive share of cities of the first class only, and nothing herein shall be construed as reducing the amount theretofore appropriated to the Cumulative Capital Improvement Fund of other cities and towns of the State."

Section 27c was also amended to provide in pertinent part:

"(c) . . . provided, that all sums to be distributed in accordance with this subsection to Cumulative Capital Improvement Funds in cities of the first class is hereby appropriated to the Metropolitan Thoroughfare Authority created pursuant to Acts 1963, ch. 386 or to any thoroughfare or transportation authority subsequently created in a city of the first class, for use by any such Authority said funds shall be distributed semi-annually on the first day of June and December each year and paid to the treasurer of the county in which such Authority is situated upon warrants issued by the Auditor of State. The county treasurer shall accept said funds pursuant to said Act and the custody of such funds shall be governed by the provisions of said Act.

"It is the intent of the General Assembly that said appropriation to such Authority shall be appropriated from the distributive shares of cities of the first class only, and nothing herein shall be construed as reducing the amount theretofore appropriated to the Cumulative Capital Improvement Fund of other cities and towns of the State. . . ."

Thus the Tax Amendment appropriated to the Capital Improvement Board of Managers of Marion County and to the Metropolitan Thoroughfare Authority of Marion County, two county-wide agencies, all the cigarette tax fund moneys that would otherwise be distributed to the cumulative capital improvement fund of Indianapolis. The Tax Amendment also repetitiously specified that it, the Tax Amendment, was not to adversely affect the distribution of cigarette tax funds to the cumulative capital improvement fund of any other city or town, including, though not specifying, Lawrence.

The 95th General Assembly subsequently enacted Acts of 1967, chapter 311 (hereinafter called the "MTA Act"), which created the Mass Transportation Authority of Marion County, a distinct municipal corporation with boundaries coterminous with the boundaries of Marion County.

This new municipal corporation was the successor to the Metropolitan Thoroughfare Authority referred to in the Tax Amendment, a fact clearly shown by the pertinent part of Section 3 of the MTA ACT:

> "(14) Upon the effective date of the enactment of this act, the [Mass Transportation] Authority shall succeed to and assume all of the powers, property, obligations and duties of the Metropolitan Thoroughfare Authority of the County authorized by Acts 1963, c. 386. The board of directors created pursuant to that act shall serve as directors of the [Mass Transportation] Authority until their successors have been appointed and qualified as provided in this act."

It is thus clear that even if the MTA Act had no provisions whatever for the funding of the Mass Transportation Authority, that agency, as the successor of the Metropolitan Thoroughfare Authority, would be entitled to the funds allocated to the Thoroughfare Authority by the Tax Amendment (i.e., the portion that would otherwise be allocated to Indianapolis' capital improvement fund less $350,000.00 appropriated to the Capital Improvement Board). It is, of course, equally clear that absent any special funding provi-

sions in the MTA Act the allocation and distribution of cigarette tax funds to the cumulative capital improvement funds of other cities and towns in Marion County, including Lawrence, would be unaffected by the passage of that MTA Act.

However, the MTA Act does specifically mention the cigarette tax fund distribution. Section 19 of the MTA Act concerns the financing of the newly created municipal corporation and provides in pertinent part:

"Financing. (a) In order to provide funds for carrying out the duties, powers and obligations of the Authority, the Authority shall receive the following money on and after the effective date of this Act, except as provided in this section:

\* \* \*

"(8) Any and all money in the Cigarette Tax Fund of the State available for distribution to the cities and towns in the County for deposit in the Cumulative Capital Improvement Funds of such cities and towns pursuant to Acts of 1947, c. 222, as last amended by Acts of 1965, c. 225, or as later amended or superseded. The Auditor of State shall pay over such money, as it becomes available for distribution, to the Controller of the Authority. Provided, however, that such money allocated to cities and towns for their respective general funds is not included herein and shall continue to be distributed and paid to the cities and towns in the County as provided by said Acts of 1947, c. 222, [§ 27b, not involved herein] as amended or superseded. Provided, further, that all funds appropriated to the Capital Improvement Board of Managers of the County by the 95th General Assembly from such cigarette tax funds shall be paid to the Treasurer of the County for the use of said Capital Improvement Board, and nothing herein shall be deemed to affect or reduce said appropriations."

All parties agree that from the semi-annual distribution in July, 1967[2] to and including the distribution in December, 1969, the Auditor of State computed Lawrence's pro rata allocation of the appropriations to the cumulative capital im-

2. The MTA Act declared an emergency and became effective upon passage, March 11, 1967.

provement funds of cities and towns as provided in sections 27c and 27d of the cigarette tax act, but forwarded that share to the Mass Transportation Authority rather than to Lawrence.

Appellant Lawrence first argues that the intent of the 95th General Assembly in enacting the Tax Amendment and the MTA Act was to appropriate to the Mass Transportation Authority only the cigarette tax fund allocation to Indianapolis' cumulative capital improvement fund as specified in the Tax Amendment. To support this contention Lawrence recites in great detail the history of the two enactments as they progressed through the legislative process, listing amendments adopted and amendments rejected as well as specifying dates and results of votes thereon. Lawrence also points to sections 15 and 16 of the MTA Act, which sections authorize the Mass Transportation Authority to adopt a budget and to levy property taxes in the amount necessary to fully implement that budget. Lawrence argues that these sections prove that the Authority is to receive its funds from property taxes levied on all taxable property in Marion County rather than from Lawrence's rightful share of the cigarette tax fund. Lawrence concluded that the language contained in section 19 (8) of the MTA Act, set out above, is not intended to be in itself an appropriation of any portion of the cigarette tax fund, but is instead intended merely to authorize the Mass Transportation Authority to receive and accept whatever moneys might be appropriated to it by the Tax Amendment.

Lawrence's arguments must fail. Section 19 (8) of the MTA Act clearly and unambiguously states that the Mass Transportation Authority is to receive "Any and all money in the Cigarette Tax Fund of the State available for distribution to the cities and towns in the County for deposit in the Cumulative Capital Improvement Funds of such cities and towns. . . ."

There is no conflict between Section 19(8) and the tax levying power granted by sections 15 and 16. Indeed, section 19 of the MTA Act specifies ten different sources of funds for the Mass Transportation Authority. The property taxes authorized by sections 15 and 16 are the second specified source, cigarette tax fund distributions are the eighth.

Nor are the Tax Amendment and the MTA Act conflicting. The Tax Amendment appropriates a certain portion of the cigarette tax fund to the Mass Transportation Authority; the MTA Act appropriates that same portion plus an additional portion. Each is a separate appropriation; neither, on its face, limits the other. Nor, apparently, was the MTA Act passed in ignorance of the Tax Amendment since it carefully and specifically preserves the appropriation to the Capital Improvement Board contained in that enactment.

Finally, the language of Section 19(8) of the MTA Act is clearly language of appropriation rather than of authorization to accept. It explicitly directs the Auditor of State to pay over the moneys specified therein to the Controller of the Authority; it impliedly authorizes the Controller to accept those moneys; it (subsection 8) neither explicitly nor impliedly authorizes the Controller to accept any funds that might be appropriated by other legislation. Such an appropriation of cigarette tax fund moneys by an independent and basically unrelated enactment is authorized by the cigarette tax act which, in its section 27, establishes the cigarette tax fund "for the purposes for which appropriations are made by this act or other law."

As was said in *Meade Electric Co.* v. *Hagberg* (1959), 129 Ind. App. 631, 640, 159 N.E.2d 408, 413:

"There are numerous cases which follow the rule that where the language or statute is clear and plain there is no room for construction, and courts have no power to supply supposed defects or omissions or to resort to construction for the purpose of limiting or extending its operation, and judicial construction is not allowable to

interpret the law which is plain upon its face. *Taelman* v. *Bd. of Fin. of School City of South Bend* (1937), 212 Ind. 26, at page 33, 6 N.E. 2d 557, *Bd. of Election Commissioners of Gibson Co.* v. *State ex rel. Sides* (1897), 148 Ind. 675, at 678, 48 N.E. 226; *Poyser* v. *Stangland* (1952), 230 Ind. 685, 106 N.E.2d 390."

Lawrence's second argument is that if the MTA Act be interpreted as providing that the Mass Transportation Authority receive the cigarette tax fund allocation to Lawrence's cumulative capital improvement fund, then that portion of the Act is a special and local law in violation of Article 4, Sections 22 and 23, of the Indiana Constitution, and a violation of the privileges and immunities clauses of both the Indiana and United States Constitutions.

Lawrence's constitutional arguments are somewhat interwoven but the thrust of those arguments is:

1. That so interpreted the MTA Act arbitrarily distinguishes between Lawrence and cities and towns located outside Marion County in relation to cigarette tax fund distributions;

2. That so interpreted the MTA Act takes money that should be distributed to Lawrence, and thus is the property of Lawrence, and gives that money to the City of Indianapolis.

Lawrence argues that it is a city having the same duties, functions and responsibilities as all other cities in the state and therefore has the same right as do those cities to its proper share of cigarette tax fund money. While admitting that classification is permissible in certain instances (e.g., "Plaintiff has no quarrel with the legislative determination that the City of Indianapolis was of sufficient size it would allow only that City to use its cigarette tax funds in a manner different from all other cities"), Lawrence maintains that the classification must be reasonable and that, unlike Indian-

apolis, Lawrence possesses no special characteristic that would justify treating it differently from other cities in relation to cigarette tax funds. Lawrence's argument would be feasible if the classification in relation to cigarette tax funds were made by the Tax Amendment and if the classification singled out Lawrence by some arbitrary standard (i.e., cities located next to an Army base in the northeast corner of a county containing a city of the first class). However, the classification is made by the MTA Act, an act applying to "counties in which a city of the first class is situate", and applying equally to all cities and towns located in counties within that classification. Lawrence does not question the validity of the legislative determination that counties in which a city of the first class is situate have transportation problems sufficiently complex to create a special authority in such counties, nor does Lawrence claim any difference in treatment between it and all other cities and towns in such counties.

Lawrence's argument that its moneys were given to the City of Indianapolis appears to be derived from a misunderstanding of the MTA Act. Although the entity created therein is styled "Mass Transportation Authority of Greater Indianapolis", it was not intended to be an agency or division of the City of Indianapolis. It was, instead, created as a separate and distinct municipal corporation with boundaries coterminous with the boundaries of Marion County (§ 2), boundaries that include both the City of Indianapolis and the City of Lawrence. As originally established the Board of Directors of the Authority consisted of six appointed members, half of whom were to be appointed by county boards: two by the county commissioners, one by the county council (§ 4). Acts of 1969, ch. 235, § 3, amended the MTA Act to create a five member board of directors, three of whom were to be appointed by the county council.[3] The Authority's ju-

---

3. This amendment was in practical effect nullified by Acts of 1969, Chapter 173 (Uni-Gov), which abolished both the county council and the Mass Transportation Agency.

risdiction, duties and responsibilities were to be exercised throughout the county (§ 3).

Under no reasonable interpretation of the MTA Act could it be said that those funds given to the Authority were funds given to Indianapolis. In beneficial effect they were given to all of Marion County, including Lawrence. That being true, were we to interpret the legislation involved herein as Lawrence desires the net result would be to transfer a part of Indianapolis' share of the cigarette tax fund to the Mass Transportation Authority for the benefit of Lawrence and the other cities and towns in Marion County while permitting those same cities and towns to retain all of their share of such funds for their own use.

There is no unfairness and no constitutional defect in the statutory provision that the Mass Transportation Authority of Greater Indianapolis receive all the payments from the cigarette tax fund that would otherwise be distributed to the cumulative capital improvement funds of the individual cities and towns located within the boundaries of the Authority.

## II.

Lawrence further contends that even if the MTA Act did lawfully appropriate some of Lawrence's share of cigarette tax fund distribution to the Mass Transportation Authority that appropriation was terminated by the passage of Acts of 1969, chapter 173 (Uni-Gov), and to sustain this proposition presents the same arguments it presented to sustain its first contention (i.e., legislative intent and unconstitutionality).

Without discussing these arguments individually we note:

1. That section 1401 of the Uni-Gov Act, as found in Ind. Ann. Stat. § 18-4-14-1 (Burns Code Ed.) concerns financing for the Consolidated City and provides in pertinent part:

"(9) Any and all money in the Cigarette Tax Fund of the State available for distribution to the First Class City

or any separate authority within the County shall be distributed as follows: All amounts appropriated to the Capital Improvement Board of Managers of the County pursuant to Acts 1947, c. 222, and Acts 1967, c. 296, shall be paid and handled as prescribed and provided by such acts. All amounts distributable to a transportation authority pursuant to Acts 1947, c. 222, or Acts 1967, c. 311, shall be paid to the Treasurer of the County for the use of the Department of Transportation. Any money distributable to the Consolidated City for the use of the General Fund thereof shall be paid to the Consolidated City."

2. That section 1003, as found in Ind. Ann. Stat. § 18-4-10-3 (Burns Code Ed.) confers powers, duties and obligations upon the Department of Transportation and provides in pertinent part:

"(b) All Transportation Powers heretofore or hereafter conferred by law upon the board of county commissioners, the county surveyor, the county highway department or the county council of the county.

"(c) All the powers, obligations and duties of the Mass Transportation Authority created by Acts 1967, c. 311, and the Metropolitan Thoroughfare Authority created by Acts 1963, c. 386."

Thus in an act that has already been held constitutional (*Dortch* v. *Lugar* [1971], 255 Ind. 545, 266 N.E.2d 25), the General Assembly has clearly expressed the intent that the moneys from the cigarette tax fund that would otherwise be distributed to the Mass Transportation Authority pursuant to the MTA Act (i.e., those funds that, were it not for the MTA Act, would be distributed to the cumulative capital improvement funds of Lawrence and all other cities and towns in Marion County) shall be, instead, distributed to a municipal agency with county-wide jurisdiction, duties and obligation.

The judgment is affirmed.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 338 N.E.2d 683.